773 F.2d 592
 Edith GILL, Individually and as Committee of Joseph E. Gill
and United Services Automobile Association, Appellants,
v.
ROLLINS PROTECTIVE SERVICES COMPANY, a Delaware Corporation,
Appellee.
Edith GILL, Individually and as Committee of Joseph E. Gill
and United Services Automobile Association, Appellees,
v.
ROLLINS PROTECTIVE SERVICES COMPANY, a Delaware Corporation,
Appellant.
 Nos. 84-1679(L), 84-1680.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1985.
Decided Sept. 26, 1985.
As Amended on Denial of Rehearing April 30, 1986.*
 
 John G. Gill, Jr., Rockville, Md. (Chris Marder; Gill & Sippel, Rockville, Md., Susan Korfanty, Arlington, Va., on brief), for appellants/cross-appellees.
 David P. Durbin, Washington, D.C. (Carol T. Stone, Jordan, Coyne, Savits & Lopata, Washington, D.C., on brief), for appellee/cross-appellant.
 Before MURNAGHAN, ERVIN and SNEEDEN, Circuit Judges.
 ERVIN, Circuit Judge.
 
 
 1
 Edith Gill brought this diversity action against Rollins Protective Services Company ("Rollins") on behalf of herself and her husband for damages resulting from the burning of their house in which Rollins had installed a fire alarm system. Upon Rollins' motion, United Services Automobile Association ("USAA"), the Gills' subrogated home insurer, was joined to the suit as a real party in interest. The case was submitted to a jury on theories of common-law negligence and violations of Virginia's Consumer Protection Act, Va.Code Ann. Sec. 59.1-196 et seq. (1977). The jury returned a general verdict in favor of the Gills for $238,032.78, and Rollins appealed. This court vacated the judgment and remanded the case for a new trial because the general verdict did not reveal upon which theory recovery was premised. Gill v. Rollins Protective Services, 722 F.2d 55 (4th Cir.1983). After remand, Gill and USAA withdrew their negligence claim and filed a motion for partial summary judgment to establish Rollins' liability for damages under the Virginia Consumer Protection Act. At the same time, Rollins sought partial summary judgment on USAA's claim under that Act. Both motions were denied by the district court, and the negligence claim was thereafter reinstated.
 
 
 2
 The case was again tried before a jury on the statutory and negligence claims. At the close of all the evidence, Gill and USAA once again withdrew their negligence claim. The jury then returned a verdict in favor of Rollins on the claims under the Virginia Consumer Protection Act.
 
 
 3
 After the district court denied Gill and USAA's motion for a new trial, they appealed, asserting that (1) the district court erred in improperly applying the legal standard for a directed verdict to the motion for a new trial, and (2) the district court erred in refusing to grant partial summary judgment on the Virginia Consumer Protection Act claims. Rollins has cross-appealed, contending that USAA, as an insurance company, lacks the capacity to seek a remedy under the Virginia Consumer Protection Act. Because we believe that the district court applied the wrong standard in ruling on the appellants' motion for a new trial, we remand this case for reconsideration of the new trial motion under the proper standard.
 
 I.
 
 4
 The facts of this case are elaborately set forth in our prior opinion at 722 F.2d at 56-58. Suffice it to say that in late August, 1978, Rollins solicited the Gills by telephone to purchase its fire and burglary alarm service. Mrs. Gill was interested in the service because her husband, who was suffering from Alzheimer's disease at the time, was somewhat careless in his smoking habits. A Rollins salesman subsequently visited Mrs. Gill and presented her with "the absolute system for [her] that would work perfectly." He described the system as virtually foolproof and capable of automatically calling the fire department for help. The Rollins salesman also gave Mrs. Gill a brochure that stated that the "virtually foolproof" wireless system would continuously monitor the house and automatically notify the proper authorities over the existing telephone system in the event of fire.
 
 
 5
 Mrs. Gill decided to subscribe to the service and signed Rollins' "Installation-Service Agreement." The system was installed on September 9, 1978. Despite the fact that Mrs. Gill had told Rollins about her husband's careless smoking habits, no fire or smoke detectors were placed in his basement study, the place where Mr. Gill spent most of his time.
 
 
 6
 On April 11, 1979, Mrs. Gill smelled smoke while she was in the kitchen above her husband's basement study. Soon thereafter, she heard Rollins' outdoor alarm. However, the inside alarm did not sound nor did the inside lights turn on as advertised. Mrs. Gill found her husband and fled the burning house, but did not call the fire department because of Rollins' assurance that the system would automatically call the fire department. However, concerned neighbors called the police who later notified the fire department. Nevertheless, the house was totally destroyed by the fire. A later investigation revealed that the fire was probably started by careless smoking in the basement study. Neither Rollins nor the Emergency Communications Center had any record of an alarm sent from the Gill house on the night of the fire.
 
 II.
 
 7
 After the jury returned its verdict in favor of Rollins on Gill's claim under the Virginia Consumer Protection Act, Gill filed a motion for a new trial. In denying this motion, the district court made the following remarks:
 
 
 8
 The plaintiffs' Rule 59 motion for a new trial is denied. The case was fairly submitted to the jury on the issues that were open in the case at the conclusion of the evidence. And their resolution of it is binding on me.
 
 
 9
 And indeed, one of the questions that the jury put to the Court indicated to me that they felt the defendant was probably guilty of negligence in mislocating a smoke detector, but that issue was taken out of the case. So, the only thing that the jury had to consider was a violation of the Virginia Consumer Protection Act.
 
 
 10
 But since I denied summary judgment to the plaintiff on the prior record and no motion was made to me at the conclusion of the evidence to direct a verdict in favor of the plaintiff, I now in effect would have to be saying that as a matter of law the plaintiff has to recover on the evidence in the case. And it will be just as easy for the Fourth Circuit to say that as it will be for me. And if they send it back and say that we hold as a matter of law that there was a violation, that that was a cause of damage to the plaintiff, all I have to do is enter judgment in the case for the same amount that the first jury gave, and that will be the end of it.
 
 
 11
 But an order will issue denying the motion, and counsel will receive a copy of it.
 
 
 12
 (JA 383-384).
 
 
 13
 This court has held that, in ruling upon a motion for a new trial, "a trial judge has a duty to set aside a verdict and grant a new trial even though it is supported by substantial evidence, 'if he is of the opinion that the verdict is against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice....' " Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-892 (4th Cir.1980) (quoting Williams v. Nichols, 266 F.2d 389, 392 (4th Cir.1959)); accord Ellis v. International Playtex, Inc., 745 F.2d 292, 298 (4th Cir.1984); Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir.1984); Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 354 (4th Cir.1941).
 
 
 14
 This standard is very different from the standard employed in granting a motion for judgment notwithstanding the verdict.
 
 
 15
 In ruling on [a] motion [for JNOV] the trial court must consider the record as a whole and in the light most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party, the motions should be denied, and the case submitted to the jury.
 
 
 16
 Wyatt, 623 F.2d at 891 (citing Mays v. Pioneer Lumber Corporation, 502 F.2d 106 (4th Cir.1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975)); see also Ellis, 745 F.2d at 298.[1] To apply the JNOV standard to a review of the evidence on a motion for a new trial is reversible error. See Williams, 266 F.2d at 392; Virginia Railway Co. v. Armentrout, 166 F.2d 400, 408 (4th Cir.1948); accord Ellis, 745 F.2d at 298.[2]
 
 
 17
 In this case, the district court confused the standard for ruling on a new trial motion with the standard for considering a JNOV motion. Specifically, the district court made two statements which illustrate the court's application of the wrong standard. First, the district court explained that the jury's "resolution of [the case] is binding on me." (JA 383). This statement is clearly at odds with the duty of a trial judge on a motion for a new trial to "weigh the evidence and the credibility of the witnesses" to see whether the verdict is "against the clear weight of the evidence ... or will result in a miscarriage of justice." Wyatt, 623 F.2d at 842. In no way was the district court so bound that he had no discretion in ordering a new trial as he seems to say here.
 
 
 18
 The district court also stated that "I now in effect would have to be saying that as a matter of law the plaintiff has to recover on the evidence in the case." (JA 383). Such a statement is consistent with the standard for a motion for JNOV, not a motion for a new trial. It contemplates that no rational jury could have reasonably returned a verdict in the defendant's favor after viewing the evidence in the light most favorable to the defendant, whereas, in deciding whether to grant a new trial, a district court must simply consider whether the verdict was against the clear weight of the evidence and is unfair.[3]
 
 
 19
 Consequently, we conclude that the district court applied the wrong standard in considering the appellants' motion for a new trial. Although the grant or denial of such a motion may "be reversed only upon a showing of abuse of discretion," Abasiekong, 744 F.2d at 1059, the application of the wrong standard in considering a motion for a new trial is plainly just such an abuse of discretion. As a result, we remand this case to the district court for reconsideration of the appellants' motion for a new trial under the proper standard as set forth in this opinion.
 
 III.
 
 20
 Gill next argues that the district court improperly denied her motion for partial summary judgment on her claims against Rollins under the Virginia Consumer Protection Act. We cannot agree.
 
 
 21
 This court has long held that summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir.1950). In reviewing the district court's denial of a motion for summary judgment, this court must apply the same standards that guided the district court in making its original decision on that motion. Smith v. University of North Carolina, 632 F.2d 316, 338 (4th Cir.1980). Consequently, we must "assess the evidence in the documentary materials before the district court in the light most favorable to the party opposing the motion" in order to determine whether the moving party has carried its burden to establish that there is "no genuine issue as to any material fact" and that the moving party "is entitled to judgment as a matter of law." United States v. Diebold, Inc, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Fed.R.Civ.P. 56(c); see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979).
 
 
 22
 In this case, Gill sought to establish that statements contained in the Rollins brochure and made to her by the Rollins salesperson constituted per se violations of the Virginia Consumer Protection Act, Va.Code Sec. 59.1-200(E), (H), (N) (1977), entitling her to judgment as a matter of law under the statute.[4] She argues that Rollins misrepresented to her that this system would automatically call the fire department in the event of fire, thus relieving her of that responsibility.
 
 
 23
 However, we conclude that the district court correctly determined that there remained issues of material fact to be developed at trial at the time partial summary judgment was sought. Therefore, Gill's motion for partial summary judgment was properly denied.
 
 
 24
 It is clear that under Section 59.1-200(H) the question of Rollins' "intent not to sell [its product] as advertised" is an issue that is "seldom appropriate" for resolution on a motion for summary judgment. Charbonnages de France, 597 F.2d at 414. "This reflects a general perception that whether as a matter of fact any particular state of mind exists can seldom be considered to be beyond reasonable dispute because this depends entirely upon conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving." Id. at 414.
 
 
 25
 Gill's claims under Secs. 59.1-200(E) and (N) are likewise unavailing. We conclude that the statements in the Rollins brochure that the system is "virtually foolproof" (JA 388) and that it "automatically notifies the proper authorities" (JA 388) in the event of fire are not, by themselves, sufficient to constitute a per se violation of Virginia's consumer protection statute. Other statements, pictures and diagrams in the brochure qualify and explain the Rollins system so that there exists a genuine issue of material fact as to whether the brochure misrepresented the Rollins system.
 
 
 26
 The brochure, for example, explains that an emergency signal in the event of fire is not transmitted in a direct computerized link to the fire department but actually is forwarded to a "central emergency station." (JA 389). It then becomes the duty of the station to forward the signal to the fire department. The brochure contains a picture of emergency station personnel and explains their role in the event of fire. (JA 389-390). In addition, it was not wholly implausible that the brochure could be interpreted as not misrepresenting the fact that the system could be deactivated if the existing telephone lines were disabled. Although the brochure states that a "wireless system also prevents deactivation by the cutting of lines," it does not specifically refer to the cutting of telephone lines. (JA 392). Indeed, the brochure expressly states that the system "notifies proper authorities over the existing telephone system." (JA 388). Consequently, on the evidence before the court at the time it ruled on the motion, the brochure's claim that the system is "virtually foolproof" and "automatically notifies the proper authorities" was sufficiently explained by the remainder of the brochure as to raise a question of fact preventing a grant of summary judgment on the issue of Rollins' fraudulent misrepresentation of its system.
 
 
 27
 Likewise, the statements of the Rollins salesperson to Mrs. Gill that the system was "ideal for her situation" and was the "absolute system ... [which] would work perfectly" were not, standing alone, sufficient to constitute a per se violation of the statute. Mrs. Gill's testimony relating to these statements at the first trial is susceptible to two differing interpretations. Although the statements clearly could be interpreted to mean that the Rollins salesperson was misrepresenting to Mrs. Gill a perfect system that would automatically call the fire department in the event of fire, the statements could also be interpreted to mean, in light of Mrs. Gill's other testimony, that this system would perfectly accommodate Mrs. Gill's wish to avoid a burglary alarm system, a system she feared her husband would frequently trigger by accident.
 
 
 28
 Since there was an issue of fact as to the context in which these statements were made and thus what they actually meant, the district court properly refused to grant partial summary judgment on Gill's Consumer Protection Act claims.
 
 IV.
 
 29
 On cross-appeal Rollins asserts that the district court erred in ruling that USAA has a subrogated right to relief under the Virginia Consumer Protection Act to recover from Rollins the $157,231.57 it has paid to Gill on her insurance policy.[5] USAA argues that it has "suffer[ed] loss as the result of [Rollins'] violation of Section 59.1-200" and consequently is "entitled to initiate an action to recover [its] actual damages" under Section 59.1-204.[6] Rollins argues that because the Act expressly states that it does not apply to "insurance companies regulated and supervised by the State Corporation Commission or a comparable federal regulatory body," Va.Code Sec. 59.1-199 D, USAA, an insurance company, lacks the capacity to seek a remedy under the Act since it comes within the reach of this exclusion. We disagree.
 
 
 30
 As an initial matter, the Virginia Supreme Court has not yet determined whether an insurance company has a right to subrogation under the Virginia Consumer Protection Act. Consequently, we may decide this issue as we believe the Virginia Supreme Court would decide it. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is our conclusion that Virginia's highest court would agree with the federal district court that an insurance company does have a right to subrogation under the Act.
 
 
 31
 In excluding insurance companies from the Act, Section 59.1-199 does not mention subrogation rights at all.[7] Instead, it is concerned that an insurance company, as well as a bank, a savings and loan association, a credit union, a small loan company or a public service corporation not be sued for its actions by a member of the consuming public so long as these entities are subject to state or federal regulation. It is reasonable to conclude that this spectre of governmental supervision served as the legislative justification for exempting these bodies from the scope of the Consumer Protection Act. In no sense did this exemption spill over into the common law notions of subrogation. As Professor Couch has noted:
 
 
 32
 As a general rule, applicable to insurance and indemnity contracts of all kinds, the insurer, on paying to the insured the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, that is, any person whose negligent or other tortious conduct caused the loss.
 
 
 33
 The fact that the insured has recovered payment for the loss from the insurer will not prevent the former from recovering from the person or persons by whose negligence or other tortious conduct the loss was occasioned, and the payment by the insurer will not be in mitigation of the damages sustained.
 
 
 34
 16 Couch on Insurance 2d Sec. 61:172 (Rev. ed. 1983).
 
 
 35
 Virginia law is in accordance with this common law trend. The right to subrogation has long been generally favored in Virginia. See, e.g., Federal Land Bank of Baltimore v. Joynes, 179 Va. 394, 402, 18 S.E.2d 917, 920 (1942) ("Virginia has long been committed to a liberal application of subrogation"); Thompson v. Miller, 195 Va. 513, 521, 79 S.E.2d 643, 647 (1954) ("While Virginia has long been committed to the liberal application of subrogation to the exigencies of particular cases, it is not a matter of absolute right but is granted or withheld as the equities of a particular case may require."); Collins v. Blue Cross of Virginia, 213 Va. 540, 544, 193 S.E.2d 782, 785 (1973) ("The general right of subrogation has long been recognized and favored in Virginia."). Indeed, Va.Code Sec. 38.1-31.2 provides that
 
 
 36
 [w]hen any insurance company makes payment to an assured under any contract of insurance, ... which contract of insurance provides that the company becomes subrogated to the rights of the assured against any other party or parties, such company may enforce, in its own name or in the name of the assured or his personal representative, the legal liability of such other party.
 
 
 37
 This right is common in the laws of many states. See, e.g., Hardware Dealers Mutual Fire Insurance Co. v. Sheek, 272 N.C. 484, 486, 158 S.E.2d 635, 637 (1968) ("Our cases seem to establish the proposition that when an insurer of property pays the insured's loss, he is subrogated to the extent of the payment to insured's claim against the wrongdoer who caused the damage."); Calvert Fire Insurance Co. v. James, 236 S.C. 431, 435, 114 S.E.2d 832, 835 (1960) ("Where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated pro tanto by operation of law to whatever rights the insured may have against the wrongdoer.").
 
 
 38
 In this case, USAA comes clearly within the requirements for an action for actual damages under Sec. 59.1-204 because it allegedly has "suffer[ed] loss as the result of [Rollins'] violation of Section 59.1-200." Both Virginia common and statutory law provide for an insurance company's right to subrogation where, as here, the insured's loss allegedly was caused by a third party's negligent or tortious conduct. Indeed, the Gill-USAA insurance contract provides for USAA's right to subrogation. (JA 423). Section 59-199 D, while exempting insurance companies from suit under the Virginia Consumer Protection Act, is silent with respect to subrogation rights. Consequently, we can see no reason why the Act should serve to nullify the Virginia common and statutory law permitting USAA a right to subrogation, in the absence of any express indication from the Virginia legislature that such a result was contemplated and desired. Accordingly, we conclude that the district court did not err in permitting USAA a subrogated right to relief under the Virginia Consumer Protection Act to recover from Rollins the money it has paid to Gill on her insurance policy.V.
 
 
 39
 For the foregoing reasons, the case is remanded to the district court.
 
 
 40
 REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 The order amending this opinion at page 598 is published at 788 F.2d 1042
 
 
 [1]
 In Ellis, we agreed with the Sixth Circuit that
 [t]he mental process in deciding a motion to direct a verdict is very different from that used in deciding a motion to set aside a verdict as against the weight of evidence. In the former there is no weighing of plaintiff's evidence with defendant's. It is only an examination into the sufficiency of plaintiff's evidence to support a burden, ignoring defendant's evidence. In the latter it is always a comparison of opposing proofs.
 745 F.2d at 298 (quoting Felton v. Spiro, 78 Fed. 576, 582 (6th Cir.1897)).
 
 
 [2]
 In Williams, we held as follows:
 [i]n passing upon the motion for a new trial and in considering the evidence in the light most favorable to the plaintiff, the trial court applied the standard applicable to a motion for a directed verdict or judgment N.O.V., rather than exercising his own independent judgment after a weighing of all the evidence and any other pertinent factors in determining whether the verdict was against the clear weight of the evidence or would result in a miscarriage of justice.... [T]he application of the wrong standard in the disposition of the motion for a new trial amounted to an abdication of the judge's function with respect to that motion.
 266 F.2d at 392.
 
 
 [3]
 Indeed, although the proposed order denying the new trial motion tendered to the district court by Rollins contains the correct standard for passing upon such a motion, the district court chose not to sign this order and instead signed an alternate order denying the motion "for reasons stated from the bench." (JA 108-109)
 
 
 [4]
 The Virginia Consumer Protection Act, Va.Code Sec. 59.1-200(E), (H), (N) reads as follows:
 Sec. 59.1-200. Prohibited practices.--The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful:
 E. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;
 * * *
 H. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised....
 * * *
 N. Using any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction;
 * * *
 
 
 [5]
 Rollins filed this cross-appeal to protect its right of review on this issue. We choose to address this appeal now to avoid further litigation on this point in the event the district court orders a new trial on remand
 
 
 [6]
 Section 59.1-204 provides as follows:
 Sec. 59.1-204. Individual action for damages or penalty.--A. Any person who suffers loss as the result of a violation of Sec. 59.1-200 shall be entitled to initiate an action to recover actual damages, or $100, whichever is greater.
 B. Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person also may be awarded reasonable attorney's fees and court costs. (1977, c. 635.)
 
 
 [7]
 Section 59.1-199 provides as follows:
 Sec. 59.1-199. Exclusions.--Nothing in this chapter shall apply to:
 A. Any aspect of a consumer transaction which aspect is authorized under laws or regulations of this State or the United States, or the formal advisory opinions of any regulatory body or official of this State or the United States.
 B. Acts done by the publisher, owner, agent or employee of a newspaper, periodical, or radio or television station, or other advertising media such as outdoor advertising and advertising agencies, in the publication or dissemination of an advertisement in violation of Sec. 59.1-200, unless it be proved that such person knew that the advertisement was of a character prohibited by Sec. 59.1-200.
 C. Those aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. Sec. 1601 et seq.
 D. Banks, savings and loan associations, credit unions, small loan companies, public service corporations and insurance companies regulated and supervised by the State Corporation Commission or a comparable federal regulating body. (1977, c. 635.)