Edith **GILL** and United Services Automobile Association, Plaintiff–Appellee,

v.

**ROLLINS PROTECTIVE SERVICES COMPANY, a Delaware corporation, Defendant–Appellant.**

No. 87–1516.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1987.

Decided Dec. 23, 1987.

David P. Durbin (Carol T. Stone; Jayson L. Spiegel; Jordan, Coyne, Savits & Lopata on brief) for defendant-appellant.

John G. Gill, Jr. (Chris Marder, Gill & Sippel on brief) for plaintiff-appellee.

Before WIDENER, MURNAGHAN, and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

In July 1981, Mrs. Gill brought this diversity suit against Rollins Protective Services Company ("Rollins") on behalf of herself and her husband for damages arising from the burning of her house in which Rollins had installed a fire alarm system. The case was submitted to the jury on theories of common law negligence and violations of Virginia's Consumer Protection Act, Va. Code Ann. § 59.1–196 et seq. The jury returned a general verdict in favor of Mrs. Gill for $238,032.78 and Rollins appealed. Because the contract signed by Mrs. Gill limited any negligence recovery to $250.00, and because the verdict did not reveal upon which theory the recovery was premised, this court vacated the judgment and remanded the case for a new trial. *Gill v. Rollins Protective Services,* 722 F.2d 55 (4th Cir.1983).

The jury in the second trial returned a verdict for Rollins on the statutory claim alone. The district court, Judge Williams, denied Gill's motion for a new trial and Gill appealed. This court ruled that the district court applied the wrong standard in ruling on the new trial motion, and remanded the case a second time for reconsideration of the motion under the proper standard. *Gill v. Rollins Protective Services,* 773 F.2d 592 (4th Cir.1985).

On remand, Judge Williams ordered a new trial. In the third full jury trial of this case, before Judge Hilton, Mrs. Gill again prevailed on the statutory claim. At the conclusion of the case the district court instructed the jury that it could award prejudgment interest to Mrs. Gill and it could pick the date upon which the running of the interest would commence. The jury returned a verdict in favor of Mrs. Gill in the amount of $244,238.17 and awarded prejudgment interest commencing from the date of the fire. This sum was calculated to be $192,819.68. Rollins filed this appeal, asserting that errors were made by both district court judges. Specifically, Rollins argues that Judge Williams abused his discretion by granting the third trial because the jury's verdict in the second trial was not against the clear weight of the evidence. Rollins also argues that since the third trial concerned only the statutory claims, Judge Hilton erred by admitting evidence of the improper placement of smoke detectors. Finally, Rollins argues that the award of prejudgment interest is improper under the facts of this case. Because we believe that Judge Williams did not abuse his discretion in granting a new trial, and because we find no reversible error in the proceedings of the third trial, we affirm the decisions below.

## I.

The facts of this case have been elaborately set forth in our prior opinions at 722 F.2d at 56–58, and 773 F.2d at 593–94. We note here only that Mrs. Gill purchased a fire alarm system from Rollins in August of 1978. Rollins represented to her that the system was virtually foolproof. The system was designed to monitor the house and automatically notify the proper authorities using the existing telephone system in the event of fire. Mrs. Gill purchased the system because her husband, who was suffering from Alzheimer's disease at the time, was careless in his smoking habits. Despite Mrs. Gill's warnings about her husband's smoking habits, Rollins failed to install fire or smoke detectors in his basement study, the place where General Gill spent most of his time.

The Gill's house burned on April 11, 1979. A fire investigation revealed that the fire started because of careless smoking in the basement study. The fire alarm system failed to call the authorities; the inside alarm failed to sound; and the inside lights failed to operate. Mrs. Gill did not call the fire department, relying on her fire alarm system to place the call for her. Neither Rollins nor the Emergency Communications Center had any record of an alarm sent from the Gill house on the night of the fire.

## II.

■ Rollins argues initially that Judge Williams should not have granted Mrs. Gill's motion for a new trial because the jury in the second trial had before it substantial evidence to justify a verdict for Rollins. The standard used by this court to determine new trial motions was set forth in *Aetna Cas. & Sur. Co. v. Yeatts*, 122 F.2d 350, 352–353 (4th Cir.1941). Judge Parker wrote for the court:

On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right.

This language has been cited with approval repeatedly during the last 45 years. *See, e.g., Williams v. Nichols*, 266 F.2d 389, 392 (4th Cir.1959); *Fischer v. United States*, 318 F.2d 417 (4th Cir.1963); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888 (4th Cir.1980); *Whalen v. Roanoke County Bd. of Supervisors*, 769 F.2d 221 (4th Cir. 1985); and finally, *Gill v. Rollins Protective Services Co.*, 773 F.2d 592 (4th Cir. 1985). *See also*, 11 Wright and Miller, *Federal Practice and Procedure*, §§ 2805 and 2819 (1973). We review Judge Williams' decision to grant the new trial only for an abuse of discretion.[1] *Aetna*, 122 F.2d at 354; *Williams*, 266 F.2d at 392.

■ Rollins argues that the jury in the second trial could have ruled against the Gills for a number of reasons. The alarm company argues first that the jury could have believed that the alarm system was inadvertently placed on the "sentinel" setting rather than the "instant-alert" setting. The sentinel setting would not have notified the fire station, but would trigger only local alarms in the event of an emergency.

Mrs. Gill testified that the setting on the alarm stayed in the "instant-alert" position at all times. She said that she checked the alarm almost daily and that it was always on the proper setting. Rollins tried to show that General Gill could have moved the setting and prevented the system from

---

1. Rollins invites us to follow *Lind v. Schenley Industries, Inc.*, 278 F.2d 79 (3rd Cir.1960) (en banc) where the Third Circuit states that a two step analysis should be followed in reviewing a district court's reasons for ordering a new trial. If the new trial is ordered because of procedural irregularities which could have affected the jury's decision, strict review is not warranted.

However, if the judge orders a new trial because he believes the verdict is against the clear weight of the evidence, the reviewing court is urged to apply a stricter standard of review. We decline Rollins' invitation to adopt Third Circuit law; rather we choose to follow this circuit's precedents as announced in *Aetna*, and its progeny.

calling the emergency center. There was no testimony that the General had ever touched the alarm. In fact there was testimony by Mrs. Gill that the General did not even know that the system was in the house. Even if the General had altered the setting on the alarm on his way to bed on the night of April 11, 1979, thereby disabling the dialing out function of the system, the sirens inside the house should have sounded and the lights should have switched on. Mrs. Gill testified that only the sirens on the outside of the house worked. The other features of the alarm system malfunctioned.

Rollins next argues that the jury in the second trial could have reasonably found that the statements contained in the Rollins brochure were not misrepresentations. The brochure said the system would "automatically call the fire department" through a "central emergency station." The "wireless" system was said to be "virtually foolproof." Mrs. Gill refrained from calling the fire department in reliance on these statements.

The testimony at trial revealed that the system was actually designed to dial an answering service, not a fire station or an emergency station. The answering service would, in turn, place a call to the proper authorities. There was testimony that the answering service employees sometimes had difficulties in convincing the relevant authorities to respond to an emergency. Furthermore, the Gills' alarm system was connected to the telephone lines in the house and when those lines burned, the Gills' "wireless" system became inoperative. Because the system never sounded the sirens located inside the house, never switched on any emergency lights, and never dialed the answering service, we find it hard to believe that the system was "virtually foolproof."

Finally, Rollins argues that the jury could have ruled in its favor on an "unintentional violation" theory. The Virginia Consumer Protection Act[2] exculpates a supplier if a misrepresentation was made despite the supplier's best efforts to prevent such an occurrence. Rollins says that it put before the jury evidence on training procedures and technical programs designed to assure customer satisfaction. Rollins argues that the jury could have believed this evidence, that a salesperson made a mistake despite Rollins' best training efforts, and voted against the Gills.

While we agree that the defense was properly before the jury, we believe that certain objective factors render it unlikely that the jury based its decision on this defense. First, the evidence on training procedures, as presented, goes to the issue of whether there was a violation of the Act, not whether the violation was an innocent one. Second, the Gills' primary claims of misrepresentation flow from the language of the brochure and the quality of the installation of the system, not the comments that a salesperson made.[3] As a result, Rollins' testimony on effective employee training does not contradict her claim. Finally, no one argued this defense to the jury. The trial court instructed the jury as to the existence of this defense but none of the attorneys told the jury that the evidence on training procedures was designed to support an argument in the alternative; i.e., that there was no violation, but if there was it was an innocent one. With only the trial court's minimal instruction as guidance, we cannot infer that the jury made the counterintuitive leap to arguments in the alternative.

Even a cursory review of the record reveals that Mrs. Gill's testimony that she believed the representations made to her were true, that she told Rollins of her husband's special needs, and that the alarm system failed to switch on inside lights and sirens, is wholly uncontradicted.[4] The trial

---

**2.** Virginia Consumer Protection Act, § 59.1–207.

**3.** Mrs. Gill does argue that a telephone salesperson contacted her with the "ideal" system for her, but testimony at trial primarily centered around the representations made in the brochure.

**4.** Rollins called the installer of the alarm system who testified that he would have installed a heat rise indicator in the General's basement study if he had been told by Rollins of the special fire hazard. Rollins called the author of its training manuals. He testified similarly. Rollins' other

judge has the discretion to order a new trial if he believes that the verdict, even if supported by substantial evidence, is against the clear weight of the evidence.[5] In this case, we are not persuaded that Judge Williams abused his discretion in ordering a new trial.

### III.

■ Rollins begins its attack on the rulings of Judge Hilton by arguing that the judge's decision to admit evidence of the improper placement of the smoke detectors in the Gill household is reversible error. The company argues that the placement of the smoke detectors is important only as to whether a standard of care for fire safety was met; i.e., the number and placement of the smoke detectors is relevant only to the abandoned negligence issue. We believe the evidence is also relevant to the misrepresentations alleged under the Consumer Protection Act.

The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed.R.Evid. 401. This court has held that the determination of the relevancy of evidence is generally committed to the sound discretion of the trial judge. *Beaty Shopping Center, Inc. v. Monarch Insurance Co. of Ohio*, 315 F.2d 467, 470 (4th Cir.1963) and *Renfro Hosiery Mills Co. v. Nat. Cash Reg. Co.*, 552 F.2d 1061, 1066 (4th Cir.1977) and that

the trial court's decision should not be disturbed absent an abuse of discretion. *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir.1982) and *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 518 (4th Cir.1985). We are persuaded that Judge Hilton did not abuse his discretion in admitting this evidence.

Evidence concerning the number and placement of smoke detectors is relevant to both the statutory and the abandoned negligence claims. Mrs. Gill argued at trial that Rollins' virtually foolproof fire alarm system, when installed, did not possess the features represented to her. Steven Swab, the plaintiff's expert, testified that the Gill house had too few smoke detectors, and those that were installed were poorly located. Swab also testified that a rate of rise heat detector should have been installed in the General's study.[6] Finally, Swab testified that the fire burned for twenty to forty minutes undetected by the fire alarm system. Such testimony certainly tends to show that the representations contained in the brochure; to wit, that the systems' "sensitive fire detectors can detect fire conditions before there is flame," were untrue.

Rollins finally argues that the award of prejudgment interest is improper in this case. Judge Hilton, at the close of the evidence, instructed the jury that it could award prejudgment interest to Mrs. Gill if she prevailed. Such interest is permitted by statute,[7] and is designed to compensate the plaintiff who has been without relief for an extended period of time. *Beale v. King*, 204 Va. 443, 132 S.E.2d 476 (1963);

---

witness testified as to how the system is designed to operate, not how it may have operated in the Gill home.

5. Judge Williams ruled that the verdict was against the clear weight of the evidence in the June 20, 1986, hearing on the motion for a new trial. Joint Appendix, at 803.

6. Such a device would trigger the alarm system but would not activate simply because of the General's heavy smoking.

7. The trial court's instruction was predicated on section 8.01–382 of the Virginia Code which provides:

Except as otherwise provided in § 8.3–122, in any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The judgment or decree entered shall provide for such interest until such principal sum be paid. If a judgment or decree be rendered which does not provide for interest, the judgment or decree awarded shall bear interest from its date of entry, at the rate as provided in § 6.1–33.10, and judgment or decree entered accordingly.

*Marks v. Sanzo*, 231 Va. 350, 345 S.E.2d 263 (1986); and *Hewitt v. Hutter*, 432 F.Supp. 795 (W.D.Va.1977). Relying on *Hewitt, supra*, Rollins argues that prejudgment interest is inappropriate when the resolution of the suit has been delayed by a bona fide legal dispute. In *Hewitt*, a trial court sitting without a jury, ruled that prejudgment interest was inappropriate where the plaintiffs were seeking specific performance relief from a land contract. The court was hesitant to award interest because the plaintiffs had been in possession of the real estate during the litigation and had already received considerable benefit from such possession.

■ We are persuaded that Rollins' urged "bona fide legal dispute" exception to the Virginia prejudgment interest statute is without support. We reach this conclusion for two reasons. First, there is no language in the statute which provides that cases containing bona fide legal disputes are beyond the reach of the statute. We decline the company's invitation to write into the statute a clause that would deny interest to those successful plaintiffs whose claims were legitimately opposed. Second, no Virginia cases mention a bona fide legal dispute exception to the statute. The Virginia Supreme Court, the final arbiter of Virginia case law, has not read the statute as Rollins would have us read it.

Rollins argues that after *Hewitt*, Virginia case law provides that the fact-finder should not award prejudgment interest where there existed a bona fide legal dispute on the merits.[8] *Hewitt*, a federal district court interpretation of Virginia law as it applies to an unusual factual situation, cannot be said to dictate Virginia case law on prejudgment interest issues. Further, this court is not bound by that federal district court's interpretation of state law. Lacking any statutory or case law support for its position, we believe Rollins' interest argument is without merit.

We have reviewed carefully Rollins' other exceptions and find them without merit. Because we find no abuse of discretion in the grant of a new trial, and because we find no error in the course of that trial, we affirm the judgment of the district court.

AFFIRMED.

---

8. The district court in *Hewitt* explained that it was required to resolve some difficult issues regarding the validity of a contract for the sale of a large parcel of real estate. While the court finds that the plaintiff must prevail on the question of whether the parties entered into a valid contract, it should be noted that the arguments advanced by the defendants were not entirely without merit. This action involved a protracted dispute over a contract involving a large sum of money. The court does not feel that it would be fair to penalize the defendants for exercising their right to litigate any bona fide legal questions that arose in connection with the formation of this contract by imposing on them an obligation to pay a large sum of prejudgment interest. 432 F.Supp. at 800.

The court reasoned that the unfairness of imposing prejudgment interest flowed from

the fact that the plaintiff has been in possession of the valuable farm Long Branch since the contract was made. The court feels that the reasonable rents and profits and possessions of such a desirable cattle farm and mansion house should equate with reasonable interest from the date of April 30, 1974, and the court so finds. *Id.*

Accordingly, the compensatory goal of the prejudgment interest statute was satisfied without the actual imposition of interest payments.