912 F.2d 464
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herman Louis BRIGHT, Defendant-Appellant.
 No. 89-5130.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1990.
Decided Aug. 24, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden II, Chief District Judge. (CR-88-72-A)
 Edward Henry Weis, Assistant Federal Public Defender, Charleston, W.V., for appellant.
 Mary Stanley Feinberg, Assistant United States Attorney, Charleston, W.V., (argued), for appellee; Michael W. Carey, United States Attorney, Charleston, West Virginia, on brief.
 S.D.W.Va.
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 Before K.K. HALL and WILKINS, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Herman Louis Bright appeals from his conviction on sixteen counts of mail fraud, in violation of 18 U.S.C. Sec. 1343; one count of wire fraud, in violation of 18 U.S.C. Sec. 1343; and one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. Sec. 371. He was sentenced to nine concurrent five-year terms of imprisonment and a consecutive five-year term of supervised probation on the remaining counts. He was also held jointly and severally liable with a codefendant for restitution in the amount of $203,197. We affirm the convictions, but vacate the restitution order and remand for further findings.
 
 
 2
 * From mid-1984 through mid-1985, Bright and Samuel Morehead developed and promoted an advance-fee loan procurement scheme to businessmen in West Virginia. Potential borrowers were told that Bright had overseas sources who would fund the loans. Anyone who was interested had to prepare a financial package and submit it to Morehead, along with an advance fee of $4,000 per $1,000,000 requested as a loan. Applicants were variously told that these fees were processing fees, finder's fees, or funds to subsidize Bright's overseas trips; all were told that the fees were refundable if the loans did not close. The loans never closed. The applicants later requested return of the fees, but no refunds were made.
 
 
 3
 Bright was interviewed by the FBI in August 1986 and January 1988. He admitted receiving the financial packages as well as approximately $50,000 in advance fees. He stated that he used this money to fund trips to England where he met with potential lenders.
 
 
 4
 Bright and Morehead were indicted on multiple fraud counts in April, 1988. Bright testified at trial that he believed that his financing plan was sound and that he had no intention of defrauding the potential borrowers. He also testified about his three trips to London and his purported efforts to convince potential funding sources to invest in his plan.
 
 
 5
 The videotaped deposition of one of Bright's London contacts, Flick Young, was played at the trial. Young testified that he introduced Bright to a number of persons whom he characterized as potential funders. Young also testified that he once saw Jack Deaton, an American who had had prior dealings with Bright, in possession of some gold certificates which he had purportedly brought to London to act as collateral for Bright's loans. The certificates later proved to be worthless. The government's relevancy objection to this portion of Young's testimony was sustained. The court also sustained the government's objection to Young's opinion that he believed "Bright had all intentions of trying to fund the projects that he was working with."
 
 
 6
 Bright and Morehead were convicted on all counts.[1] After the sentences were announced, a separate restitution hearing was held on April 17, 1989. The court found that Bright and Morehead were "virtually impoverished" at the time of sentencing, but that "[b]oth seem to have strong imaginations when it comes to raising money...." There was no dispute over the presentence report's findings that Bright had lived at home with his unemployed wife and six minor children, and there was little or no evidence that he had the ability, by virtue of training or experience, to earn sufficient income from which he could realistically pay a large restitution sum. Nevertheless, the district court ordered that he and Morehead be held jointly and severally liable to pay some $200,000 in restitution.
 
 
 7
 Bright appeals the conviction and restitution order.
 
 II
 
 8
 On appeal, Bright contends that the trial court erroneously sustained the objections to Young's deposition testimony regarding his observation of the gold certificates in Deaton's possession and his opinion as to Bright's lack of fraudulent intent. He further contends that the restitution order was based on insufficient findings of fact.[2] We address these issues in turn.
 
 
 9
 Bright's evidentiary arguments are premised on his defense at trial that he lacked the necessary intent to defraud the loan applicants. Crucial to this defense was a showing that his efforts to obtain funding were genuine. He argues that Young's testimony about Deaton's gold certificates was probative because it tended to show that his reliance on Deaton to provide collateral was not unfounded. We are not persuaded.
 
 
 10
 Evidentiary rulings by the trial court under Fed.R.Evid. 401 are generally subject to review for an abuse of discretion. Gill v. Rollins Protective Services Co., 836 F.2d 194, 198 (4th Cir.1987). Bright's failure to link the certificates to his efforts to fund the loans convinces us that the exclusion of this testimony was not an abuse of the court's discretion.
 
 
 11
 Bright asserts that evidence of the mere existence of the gold certificates was relevant because it tended to lend credence to his argument that his efforts to obtain funding were genuine. This greatly overstates the clarity of the testimony. Young stated that the documents he saw in Deaton's possession were to be "put as securities for a loan to raise money on," but no connection was ever made between the certificates and Bright's efforts. Bright himself never testified that he knew of the certificates. The link between the certificates and Bright's lack of intent to defraud was attenuated indeed, and the trial court did not abuse its discretion in excluding it.
 
 III
 
 12
 The second evidentiary issue involves the exclusion of Young's opinion testimony that he believed Bright intended to secure funding for the loan packages. The trial court characterized the testimony as "the purest kind of speculation." Again, the ruling is subject to review for abuse of discretion. United States v. Robinson, 804 F.2d 280, 282 (4th Cir.1986).
 
 
 13
 Fed.R.Evid. 701 permits lay opinion testimony which is "(a) rationally based on the perception of the witness and (b) helpful to ... the determination of a fact in issue." Inasmuch as intent is an element of the crimes charged, it is arguable that the excluded testimony would have been helpful to a determination of such fact. We reject Bright's argument, however, on the basis of the first prong of Rule 701's test.
 
 
 14
 Bright argues that Young's relationship with him was such that Young was quite capable of forming an informed opinion about Bright's efforts to secure funding for his fee scheme. It appears, however, that this opinion was formed almost entirely through Young's conversations with Bright, and not on any first-hand knowledge of Bright's efforts to secure the funding for the loans. We find no abuse of the court's discretion in excluding this opinion as being speculative.
 
 IV
 
 15
 Bright's final contention[3] is that the trial court erred in holding him liable, along with Morehead, for some $200,000 in restitution. We agree that the court failed to fully comply with the procedure required in regard to determining and ordering restitution.
 
 
 16
 In ordering restitution, due consideration must be given to, inter alia, the defendant's financial resources, financial needs, and his earning ability. 18 U.S.C. Sec. 3580(a). Moreover, the trial court must make "explicit fact findings" with regard to the statutory criteria. United States v. Bruchey, 810 F.2d 456, 458 (4th Cir.1987). We are not persuaded by the government's argument that the court's acceptance of the pre-sentence report's findings satisfies this requirement, particularly because the report makes no attempt to match resources, needs and earning ability to a restitution figure. Inasmuch as the required findings were not made, beyond the optimistic observation that Bright's "strong imagination" might translate into future earning power, this portion of the judgment must be vacated and remanded.
 
 
 17
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 [1]
 Another codefendant and participant in the scheme, Harold Osburn, was also tried with Bright and Morehead. Osburn was acquitted on all counts
 
 
 [2]
 Bright, despite being represented on appeal by appointed counsel, filed a pro se brief raising entirely different issues. We find no merit in those claims
 
 
 [3]
 We have reviewed Bright's contention that the jury instructions impermissibly shifted the burden of proof and find it to be meritless