960 F.2d 146
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Allison Greer KRAMER, Plaintiff-Appellant,
v.
OVERNITE TRANSPORTATION COMPANY; Donald Dewitt TESSENEAR,
Defendants-Appellees.
 No. 91-1688.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 6, 1992
Decided: April 23, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, District Judge. (CA-90-430-A)
 ARGUED: Edward Henry Kerman, Rockville, Maryland, for Appellant.
 William G. McMurtrie, Fairfax, Virginia, for Appellees.
 E.D.Va.
 AFFIRMED.
 Before HALL and LUTTIG, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Appellant Allison Greer Kramer filed this diversity action in the United States District Court for the Eastern District of Virginia against appellees Overnite Transportation Company and Donald Dewitt Tessenear to recover damages for personal injuries sustained in a motor vehicle accident. The jury rendered a verdict for appellees, and the district court denied appellant's motion for a new trial. From the district court's denial of her motion for new trial, Ms. Kramer appeals. We conclude that the district court did not abuse its discretion in denying the new trial motion, and therefore affirm.
 
 I.
 
 2
 At about noon on April 2, 1988, appellee Donald Dewitt Tessenear was driving a tractor-trailer owned by appellee Overnite Transportation Company southbound in the left-center lane of Interstate 495 in Fairfax County, Virginia. Appellant was proceeding in an automobile in the same direction in the adjacent right-center lane. Following his standard lane-change procedure, Mr. Tessenear checked for traffic in front of the cab of the truck, checked in his long, vertical side mirror for traffic behind the truck, checked for traffic on the side of the cab, checked for traffic in his round, "spot" mirror, turned on his signal, and then repeated the checking procedure in reverse. See J.A. at 360. Mr. Tessenear then began to move toward the right-center lane. At some point, the truck collided with Ms. Kramer's car. See id. at 32829, 363-64. The car apparently collided with the truck just in front of the truck's rear trailer wheels. See id. at 355. The impact from this initial collision spun the car ninety degrees to its left so that it was perpendicular to the side of the truck, see id. at 282-83, 311-13, 333, 364, and lodged in front of and under the rear wheels of the trailer. See id. at 333. Upon the initial impact, Mr. Tessenear applied his brakes and eventually brought the truck to a complete stop, after having dragged the trapped automobile some 588 feet. See id. at 39. By the time the truck came to a stop, the trailer's rear wheels had crushed the driver's compartment of the car. See id. at 329, 333.
 
 
 3
 On March 28, 1990, Ms. Kramer brought this diversity action against appellees in the United States District Court for the Eastern District of Virginia, seeking to recover for the injuries that she sustained in the accident. After a four day trial, the jury returned a verdict in favor of the appellees. Appellant then filed a motion for a new trial pursuant to Rule 59(a), which the district court denied on July 22, 1991.[1] Ms. Kramer appeals.
 
 II.
 
 4
 A new trial should be granted under Rule 59(a) of the Federal Rules of Civil Procedure if the jury's verdict is against the clear weight of the evidence, is based upon evidence which is false, or will result in a miscarriage of justice. Gill v. Rollins Protective Servs. Co., 836 F.2d 194, 196 (4th Cir. 1987); Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir. 1941). The district court denied appellant's motion on the ground that the verdict was not contrary to the clear weight of the evidence. In particular, it believed that the jury "might reasonably have concluded that defendant's driver was not negligent because he never crossed into plaintiff's lane of travel." J.A. at 505. In reaching its conclusion, the court relied on the testimony of Mr. Tessenear himself; Ms. Kimberly Branstiter, a third-party eyewitness to the accident; and Mr. John Strong, the state trooper who investigated the scene of the accident, all of which, in the district court's view, either indicated or supported the inference that the tractor-trailer had not left its lane at the time the impact occurred. See id. at 506.
 
 
 5
 Appellant argues before this court that the evidence cannot support a conclusion that the truck never left its lane:"[T]he only evidence adduced at trial ... was that the Defendants' truck did change from its lane of travel into the lane in which Plaintiff was traveling. There was absolutely no evidence of any nature introduced during the entire trial which indicated that the Plaintiff crossed over or even touched the white line which divided her lane of travel from that of Defendant's." Appellant's Br. at 14.
 
 
 6
 This court performs a limited role in reviewing a district court's disposition of a motion for new trial. Our responsibility is not to weigh the evidence or to judge the credibility of witnesses. Our responsibility is only to ensure that the district court did not abuse its discretion in ruling on the motion. Here, that charge requires that we determine whether it was within the discretion of the court to decide that the jury's conclusion that Mr. Tessenear was still in the leftcenter lane when his truck and Ms. Kramer's car collided was not against the clear weight of evidence. Gill, 836 F.2d at 196; Aetna, 122 F.2d at 354-55. We are convinced from a review of the record that the district court was fully within in its discretion in so deciding.
 
 
 7
 The jury could reasonably have based its conclusion that Mr. Tessenear never left his lane on any or all of the testimony of five separate witnesses, including that of appellant herself and the passenger in her car at the time of the accident. First, as the district court noted, Mr. Tessenear testified on direct examination that he did not think he had crossed the white line before impact occurred: "That's why I couldn't understand what I had hit, because I had only begun my merge over to that lane." J.A. at 364.
 
 
 8
 Appellant argues that Mr. Tessenear's interrogatory statement that he "moved to the right, felt a slight bump, and moved back into [his] original lane," id. at 154 (emphasis added), is tantamount to an admission by Mr. Tessenear that he in fact had left his lane of travel because otherwise he would have had no need to "move back into [his] original lane." While one could reasonably interpret Mr. Tessenear's interrogatory statement in this manner, the jury could just as reasonably have interpreted this statement to mean that the initial impact occurred within his lane as he moved toward its right side, and that afterward, Mr. Tessenear aborted the lane change attempt and returned to a normal cruising position in the center of his lane. Such an interpretation would be especially reasonable given Mr. Tessenear's testimony that he did not believe he ever crossed the white dividing line.
 
 
 9
 Second, the testimony of Ms. Kimberly Branstiter also could be understood to support the jury's conclusion that Mr. Tessenear never left his lane. Ms. Branstiter was traveling in the far left lane behind the truck and the car at the time of the accident. Id. at 328, 340. She stated at trial that the impact occurred"just about when [Mr. Tessenear] got to the center line," id. at 328, and that at most, the rear wheels of the trailer touched the white center line, see id. at 331. At another point in her testimony, Ms. Branstiter stated that "the back wheels [of the trailer] had not gone all the way across [the white center line] yet." Id. at 350. And, in responding to a question on cross examination as to how she could remember the accident in such detail, she noted that her attention was drawn to the trailer and the car "[b]ecause they were riding so close to that center line, both parties." Id. at 350.
 
 
 10
 Appellant discounts Ms. Branstiter's testimony because at three points she referred to Mr. Tessenear having "pull[ed] immediately back into his lane" after the initial impact. See id. at 329, 332, 355. As she contended with respect to Mr. Tessenear's interrogatory statement, appellant contends that a jury could conclude from these three statements by Ms. Branstiter that Mr. Tessenear had left his lane and entered appellant's. This is true, but a jury could also interpret these statements simply to mean that Mr. Tessenear recentered himself in a cruising position in his own lane after the impact. Or it could have reasonably understood Ms. Branstiter only to say that Mr. Tessenear's truck had touched the far left side of the white center line dividing his lane from appellant's lane, but that he had not entered into the rightcenter lane.
 
 
 11
 Third, Ms. Robyn Gross, the passenger in appellant's car at the time of the accident, appeared as a witness for the defense. She testified that she did not know whether the truck was moving toward the car or if the car was moving toward the truck at the moment of impact. See id. at 302, 310. She also stated that she did not know whether the truck ever crossed the white center line between the two lanes. See id. at 321.
 
 
 12
 Appellant points to Ms. Gross' statement that she never saw appellant move out of her lane into the lane in which the truck was traveling. See id. at 324. While this testimony would support a jury finding that appellant never left her lane, it does not foreclose a jury finding based upon her earlier statements that the truck never left its lane. It may have been that she saw neither vehicle move from its lane. It may even have been that she was aware that appellant had left her lane, but that she did not see her leave the lane. In either event, given that Ms. Gross was a passenger in appellant's car, the jury reasonably could have concluded from her testimony that the truck never left its own lane.
 
 
 13
 Fourth, John Strong, the Virginia state trooper who investigated the accident scene, testified as a lay witness for appellant. He stated that he traced the skid marks from the tractor-trailer back only to the leftcenter lane and that he found no physical evidence from which he could conclude that the truck had crossed into the right-center lane at any time. See id. at 79. He testified that the skid marks from the trailer wheels "began right on that line that separates the left-center lane from the right-center lane." Id. at 131. The jury also could have inferred from this testimony that the truck never left the left-center lane.
 
 
 14
 Finally, appellant herself frankly testified on cross-examination that she did not know whether she drifted into the truck or whether the truck drifted into her. See id. at 281-82. The jury could have concluded from this candid inability to deny the possibility that she might have crossed over into Mr. Tessenear's lane that she in fact had drifted into his lane.
 
 
 15
 There was no affirmative evidence introduced during the trial of this matter that Mr. Tessenear left his lane before the accident occurred and there was no affirmative evidence that Ms. Kramer did not leave her lane.[2] Especially in the absence of such evidence, the testimony from the five witnesses recited above in the aggregate is more than sufficient to establish that, whether or not the jury was in fact correct, its conclusion that Mr. Tessenear never left his lane before his collision with Ms. Kramer's car was not against the clear weight of the evidence. The district court therefore did not abuse its discretion in denying appellant's motion for new trial.
 
 AFFIRMED
 HALL, Circuit Judge, dissenting:
 
 16
 Because I believe the district court erred in denying plaintiff's motion for a new trial, I respectfully dissent.
 
 
 17
 The plaintiff was severely injured when defendant's semi-trailer struck her automobile while traveling fifty to fifty-five miles per hour, dragged it approximately two hundred yards and then stopped on top of her. The evidence is clear and undisputed that plaintiff was in her lane of traffic at all times prior to the contact between the vehicles. The evidence is also clear that the defendant's truck attempted to change lanes and hit plaintiff's car when the rear wheels of the trailer came to the center line.
 
 
 18
 To permit the jury to absolve the defendant of liability under these circumstances is clear error. I would reverse.
 
 
 
 [1]
 Appellant never moved for a directed verdict on the issue of liability
 
 
 [2]
 The dissent does not address, much less contest, this evidence. It simply asserts, without citation to the record, that appellant never left her lane of travel. Not only was there no affirmative evidence that appellant did not leave her lane, there was, as even the dissent concedes, uncontradicted, affirmative evidence introduced that the truck never left its lane. On this record, there really can be no question that the jury's verdict was not against the clear weight of the evidence. There certainly can be no question that the district court was within its discretion in deciding that the jury's verdict was not against the clear weight of the evidence