43 F.3d 1466
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Fred E. GARRETT; Linda Sue GARRETT, Plaintiffs-Appellants,
v.
TRW, INCORPORATED, a foreign corporation, Defendant-Appellee, and
Ray MESSINGER; Exxon Company; Gerardr. Stowers; Genet.
Shapert; Chuck Katz; Dick Higgins; W.J. McAnelly; Robert
Cashill; Paccar, Incorporated, a foreign corporation,
Parties in Interest.
 No. 94-1188.
 United States Court of Appeals,
 Fourth Circuit.
 Argued Nov. 1, 1994.
Decided Dec. 14, 1994.
 
 Monty L. Preiser, PREISER LAW OFFICES, Charleston, W.Va., for Appellants.
 Winfield Turley Shaffer, Charleston, W.Va., for Appellee.
 David Stephen Skeen, South Charleston, WV, for Appellants.
 S.D.W.Va.
 AFFIRMED.
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-91-314-2)
 OPINION
 Before RUSSELL and WILLIAMS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Fred Garrett ("Garrett") initiated this products liability action against defendant-appellee TRW, Inc. ("TRW") in the District Court for the Southern District of West Virginia. After the jury returned a verdict for the defendant, Garrett moved for a new trial. District Court Judge John T. Copenhaver, Jr. denied the motion, and Garrett appealed. After considering the record, briefs and oral arguments, we cannot say that the district judge abused his discretion in denying the motion for a new trial.
 
 I.
 
 2
 Garrett was a truck driver for Exxon Corporation. On December 26, 1988, Garrett was injured in an accident in which the Peterbilt truck he was driving jumped a guardrail, went over an embankment, burst into flames, and then exploded. Garrett contended that as he attempted to steer into a curve, the steering on the truck failed, causing the truck to travel straight through the curve and jump the guardrail. Garrett attributed this loss of steering to the malfunction of the TAS65 power steering gear box manufactured by TRW and installed in the truck. Exxon, Peterbilt, and TRW, contended that driver error caused the accident.
 
 
 3
 In August 1988, four months before the accident, TRW issued a recall of certain TAS65 gear boxes, and Exxon sent the gear box in the Garrett truck back to TRW. TRW's records reflect that there was no problem with the Garrett gear box, and it was reinstalled in the truck.
 
 
 4
 Garrett alleged that during the first year after the recall, there continued to be significant problems with the TAS65 model steering gear box, including those sent to TRW for inspection and repair. Because of the enormity of the recall, TRW sent the inspected and repaired gear boxes directly back to the truck owners for installation. TRW assisted by telephone those calling for help in installation. If that assistance was unsuccessful, TRW gave the installer an R.G.A. number (Returned Gear Authorization), and the gear was returned to TRW. During discovery, TRW produced 88 documents concerning boxes given an R.G.A. number; these documents included the installers' complaints.
 
 
 5
 After the accident, the Public Service Commission of the State of West Virginia investigated the scene. Gary Miller was in charge of this investigation. Because of the recall, Miller ordered Exxon to schedule an examination and tear down of the steering gear box. Present at this examination were Miller, other representatives from the Public Service Commission, five Exxon representatives, and a representative of Paccar, the manufacturer of the Peterbilt truck. No TRW representative was present. After the examination, Miller made an official report to the Public Service Commission.
 
 II.
 
 6
 This case presents three issues: (1) whether the trial judge erred in admitting into evidence the report of the Public Service Commission; (2) whether the trial judge erred in failing to admit into evidence all 88 documents concerning the TAS65; and (3) whether the trial judge erred in failing to allow counsel to cross-examine Exxon witnesses concerning the prior representation of Exxon by the defendant's law firm. We review the district court's evidentiary and procedural rulings for an abuse of discretion. Persinger v. Norfolk & W. Ry. Co., 920 F.2d 1185, 1189 (4th Cir.1990); Gill v. Rollins Protective Servs. Co., 836 F.2d 194, 196 (4th Cir.1987).
 
 A. The Public Service Commission Report
 
 7
 Rule 803(8) of the Federal Rules of Evidence states that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness" are admissible, even if hearsay.
 
 
 8
 This is not to say that a report containing the findings of a public agency, made pursuant to an investigation authorized by law, is always admissible. To the contrary, if "sufficient negative factors are present" to indicate the report is not trustworthy, it should not be admitted. The factors that may be used to determine admissibility include: (1) the timeliness of the investigation; (2) the special skill or experience of the official; and (3) possible motivation problems. But the burden is on the party opposing admission to demonstrate that the report is not reliable.
 
 
 9
 Ellis v. International Playtex, Inc., 745 F.2d 292, 301 (4th Cir.1984) (citations admitted) (quoting Fed.R.Evid. 803(8)(C) advisory committee's note).
 
 
 10
 Garrett argued that because the author of the report, Miller, was not an expert on steering mechanisms, and because the representatives of Exxon and Peterbilt who were present at the examination of the gear box were biased against him, sufficient negative factors existed to make the report of the Public Service Commission inadmissible. Although Miller was not an expert on steering mechanisms, this does not make the report untrustworthy. Also, Garrett failed to show how or why the Exxon and Peterbilt representatives would be motivated to say that the TAS65 was functioning properly, when it could be to their interests to find fault with this equipment. We cannot say that the trial judge abused his discretion in admitting the report into evidence.
 
 B. The Business Records
 
 11
 Of the 88 documents submitted by TRW concerning complaints about the TAS65, the trial court allowed into evidence only those in which the complaints were similar to Garrett's particular complaint. Excluded documents contained complaints of oil leaks, pressure problems, vibration, and other problems that did not include an inability to steer. Garrett argued that all 88 documents should have been admitted as they were representative of the continuing problems that TRW was having with this particular gear box.
 
 
 12
 The record shows that the district judge spent considerable time determining which documents to admit into evidence. The court considered the relevance of these documents during the course of three trial days. First, the court had Garrett remove all the documents in which the complaint was dissimilar to the facts of the case. After this process, Garrett returned with a request that fifty of the documents be admitted into evidence. The court then allowed Garrett to examine one of his expert witnesses concerning relevance. Finally, the court recessed and personally examined all fifty proffered documents before making its ruling. The district judge was thorough and we cannot say that he abused his discretion.
 
 C. Conflict of Interest
 
 13
 During discovery of this case, TRW's law firm, Jackson & Kelly, learned that its attorneys were representing both TRW in the instant case and Exxon in Garrett's worker's compensation claim. After this discovery, the firm issued an order that the attorneys were to refrain from talking to any firm representative working on the other case. After a discovery dispute with TRW, Exxon removed the worker's compensation file from Jackson & Kelly and filed a successful motion to stop ex-parte communications that were occurring between Exxon employees and the law firm.
 
 
 14
 Garrett argued that because TRW lead the jury to believe that the witnesses from Exxon were unbiased, then he should have been allowed to cross-examine them concerning the amount of influence TRW exerted on them when TRW and Exxon shared the same counsel on matters directly bearing on the accident. This argument is without merit, and the judge did not abuse his discretion by denying the motion for a new trial.
 
 
 15
 For all the foregoing reasons, the judgement of the district court is AFFIRMED.