## ÆTNA CASUALTY & SURETY CO. v. YEATTS.

### No. 4794.

Circuit Court of Appeals, Fourth Circuit.

Aug. 22, 1941.

Robert G. Butcher, of Richmond, Va. (A. N. Heflin, of Richmond, Va., on the brief), for appellant.

Malcolm K. Harris and John W. Carter, Jr., both of Danville, Va. (Maitland H. Bustard, of Danville, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and H. H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is the second appeal in a suit originally instituted to obtain a declaratory judgment with respect to the coverage of a policy of indemnity insurance. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665. Following our first decision, the defendant Yeatts filed an amended answer alleging that consent judgment had been entered in the suit for damages filed against him in the state court and asking recovery thereof, together with costs, interest and attorney's fees, against the insurance company, plaintiff in the suit for declaratory judgment. The company denied liability on the ground that the defendant Yeatts was engaged in the performance of a criminal abortion at the time he incurred the liability for which the recovery was had against him, and that such liability was expressly excluded from the coverage of the policy. The question as to whether the defendant Yeatts was engaged in such criminal conduct was submitted to the jury, and from verdict and judgment in his favor the plaintiff brings this appeal.

There was testimony below from which the jury would have been amply justified in finding in favor of the plaintiff insurance company on the issue submitted; but the defendant himself was examined as a witness and, if his testimony is believed, he was guilty of no criminal act. No motion for directed verdict was made by the plaintiff, nor was the sufficiency of the evidence to sustain a finding in favor of the defendant challenged in any other way before verdict. After verdict, plaintiff moved for judgment non obstante veredicto and also for a new trial, on the ground that the verdict was contrary to the credible evidence in the case; and exceptions directed to denial of these motions constitute the only points presented by the appeal.

Even if a motion for directed verdict had been made by plaintiff, it is clear that same should have been denied as should, also, any motion for judgment non obstante veredicto based thereon; for it is too well settled to warrant discussion that, on such motion, the evidence must be taken in the light most favorable to the party against whom the directed verdict is asked and that all conflicts must be resolved in his favor. But here there was no motion for directed verdict to serve as a basis for the motion for judgment non obstante veredicto; and such judgment can be entered on the ground of the insufficiency of the evidence only where motion for directed verdict has been duly made. Rules of Civil Procedure 50(b), 28 U.S.C.A. following section 723c; Baten v. Kirby Lumber Corp., 5 Cir., 103 F.2d 272; Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; Montgomery Ward & Co. v. Duncan 311 U.S. 243, 61 S. Ct. 189, 85 L.Ed. 147. In addition, it is well settled that, where the sufficiency of the evidence has not been challenged in this or some other appropriate way during trial, we have no power to review its sufficiency on appeal. Pocahontas Coal & Coke Co. v. Cook, 4 Cir., 74 F.2d 878 and cases there cited. As said by Judge Sibley in Baten v. Kirby Lumber Corporation, supra [103 F.2d 274], "Rule of Civil Procedure 50, 28 U.S.C.A. following section 723c, does not do away with but emphasizes the necessity of a motion for a directed verdict to raise the legal question whether the evidence is sufficient."

The motion to set aside the verdict and grant a new trial was a matter of federal procedure, governed by Rule of Civil Procedure 59 and not subject in any way to the rules of state practice. On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of

a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right. Smith v. Times Pub. Co., 178 Pa. 481, 36 A. 296, 35 L.R.A. 819; Bright v. Eynon 1 Burr. 390; Mellin v. Taylor 3 B.N.C. 109, 132 Eng. Reports 351. The matter was well put by Mr. Justice Mitchell, speaking for the Supreme Court of Pennsylvania in Smith v. Times Publishing Co., supra [178 Pa. 481, 36 A. 298], as follows: "The authority of the common pleas in the control and revision of excessive verdicts through the means of new trials was firmly settled in England before the foundation of this colony, and has always existed here without challenge under any of our constitutions. It is a power to examine the whole case on the law and the evidence, with a view to securing a result, not merely legal, but also not manifestly against justice,—a power exercised in pursuance of a sound judicial discretion, *without which the jury system would be a capricious and intolerable tyranny*, which no people could long endure. This court has had occasion more than once recently to to say that it was *a power the courts ought to exercise unflinchingly*." (Italics supplied).

In the same case, Mr. Justice Williams, in a concurring opinion, traces the history of the exercise of this power and sums up his conclusion as follows:

" 'Trial by jury' therefore meant, at the time of Magna Charta, the investigation and decision of an issue of fact between parties litigant by 12 men, sitting as jurors, under the advice and legal direction of a law judge. When the verdict is rendered by the jury, it is to the court of which they are a part. It is recorded upon the minutes of the court, and becomes a part of the record of the trial; but it does not thereby become a judgment of the court, unless the judge is satisfied with it, and specially or by general order or rule so directs. He has a responsibility for the result no less than the jury, for it is his duty to see that right and justice are done, so far as this may be practicable in the particular case. If he is not satisfied with the verdict, it is his duty to set it aside, and grant a new trial before another jury. This was the settled practice in England as early as 1665. Forsyth, Jury Tr. 164. Lord Holt states that the practice of granting new trials, as a means of correcting the mistakes and relieving against the mis-

conduct of juries, was in use much earlier than 1665, but accounts for its exercise not appearing in the books for the reason that, prior to that date, the action of the courts upon motions was not reported.

\* \* \* \* \*

"As early, therefore, as 1665, the courts at Westminster did precisely what we have done in this case, and for the same reason. The right of trial by jury was not then supposed to give to a successful party the right to insist on an advantage due to the mistake or the willful misconduct of the jury, no matter how grossly unjust and oppressive the result might be; but the supervisory control of the court in banc, sitting as a court of review, was promptly exercised to relieve against the miscarriage of justice. The exercise of this power was then thought to be in aid of trial by jury. Lord Mansfield, in Bright v. Eynon, 1 Burrows, 390, described the effect of thus granting a new trial as 'no more than having the cause more deliberately considered by another jury, when there is reasonable doubt, or perhaps a certainty, that justice has not been done.' The function of the jury was well defined by Chief Justice Holt in Ash v. Ash, Holt, 701, nearly 100 years before the Declaration of Independence: 'The jury are to try the cause with the assistance of the judge.' They are not, and have never been, independent of the court of which they are a part, but their verdicts must meet the approval, or at least they must not offend the sense of justice, of the presiding judge, who, as the late Justice Grier, of the supreme court of the United States, was fond of saying, was by virtue of his position 'the thirteenth juror.' "

In 1757, Lord Mansfield in Bright v. Eynon, supra, had this to say with respect to the exercise of the power:

"Trials by jury in civil causes, could not subsist now without a power, *somewhere*, to grant new trials. \* \* \* There are numberless *causes* of false verdicts, *without* corruption or bad intention of the jurors. They may have heard too much of the matter before the trial; and imbibed prejudices without knowing it. The cause may be intricate: the examination may be so long as to distract and confound their attention. Most general verdicts include *legal consequences* as well as propositions of fact: in drawing these consequences the jury may mistake, and infer

directly contrary to law. The parties may be *surprised* by a case falsely made at the trial, which they had no reason to expect, and therefore could not come prepared to answer. If *unjust* verdicts obtained under these and a thousand like circumstances, were to be conclusive for ever, the determination of civil property, in this method of trial, would be very precarious and unsatisfactory. It is absolutely *necessary to justice,* that there should, upon many occasions, be opportunities of *reconsidering* the cause by a new trial."

In Mellin v. Taylor, supra, Chief Justice Tindal said: "I cannot conceive how the benefit of trial by jury can be in any way impaired by a cautious and prudent application of the corrective which is now applied for: on the contrary, I think that, without some power of this nature residing in the breast of the Court, the trial by jury would, in particular cases, be productive of injustice, and the institution itself would suffer in the opinion of the public."

■ To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require.

■ The distinction between the rules to be followed in granting a new trial and directing a verdict were stated by us with some care in Garrison v. United States, 4 Cir., 62 F.2d 41, 42, from which we quoted with approval in the later case of Roedegir v. Phillips, 4 Cir. 85 F.2d 995, 996, as follows: "Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his

power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro [6 Cir.], 78 F. 576. Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice."

■ It is equally well settled, however, that the granting or refusing of a new trial is a matter resting in the sound discretion of the trial judge, and that his action thereon is not reviewable upon appeal, save in the most exceptional circumstances. Montgomery Ward & Co. v. Duncan, supra, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Barnes v. South Carolina Public Service Authority, 4 Cir., 120 F.2d 439; Aetna Ins. Co. v. Norris Bros., 4 Cir., 109 F.2d 172; Southern Fruit Distributors v. Fulmer, 4 Cir., 107 F.2d 456; Pocahontas Coal & Coke Co. v. Cook, 4 Cir., 74 F.2d 878; Upton v. Harrison, 4 Cir., 68 F.2d 232; Niagara Fire Ins. Co. of New York v. Raleigh Hardware Co., 4 Cir., 62 F.2d 705. The rule and the reason therefor is thus stated by Mr. Justice Brandeis in Fairmont Glass Works v. Cub Fork Coal Co., supra [287 U.S. 474, 53 S.Ct. 254, 77 L.Ed. 439]: "The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals. Its early formulation by this Court was influenced by the mandate of the Judiciary Act of 1789, which provided in section 22 that there should be 'no reversal in either (circuit or Supreme) court on such writ of error * * * for any error in fact.' Sometimes the rule has been rested on that part of the Seventh Amendment which

provides that 'no fact tried by a jury, shall be otherwise re-examined in any court of the United States than according to the rules of the common law'. More frequently the reason given for the denial of review is that the granting or refusing of a motion for a new trial is a matter within the discretion of the trial court."

While an examination of the record has led us to the conclusion that the trial judge might very properly have granted the motion for new trial, we cannot say that his denial of the motion amounted to an abuse of discretion on his part or that there are present any of the special circumstances which would subject his action to review by this court. The judgment appealed from will accordingly be affirmed.

Affirmed.