UNITED STATES of America, for the Use and Benefit of WEYERHAEUSER COMPANY, Plaintiff-Appellee,

v.

BUCON CONSTRUCTION COMPANY, Inc., and Travelers Indemnity Company, Defendants-Appellants.

No. 28192.

United States Court of Appeals, Fifth Circuit.

June 15, 1970.

Seymour H. Rowland, Jr., Wallace Dunn, William V. Chappell, Jr., Ocala, Fla., for defendants-appellants.

Roe Wilkins, Orlando, Fla., for plaintiff-appellee.

Before PHILLIPS,* BELL and SIMPSON, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge:

This is an action brought by the United States for the use and benefit of Weyerhaeuser Company [1] against Bucon Construction Company, Inc.[2] and Travelers Indemnity Company.[3]

Bucon was the prime contractor, under a contract entered into on April 18, 1962, between it and the United States, acting through C. A. Bird, Lt. Colonel, Corps of Engineers, as contracting officer, for the construction of a project known as Base Chapel, at the Air Force Missile Test Center, Patrick Air Force Base, Florida. Bucon, as principal, and Travelers, as surety, executed on April 18, 1962, the payment bond required by the Miller Act (40 U.S.C.A. § 270a) "for the protection of all persons supplying labor and material in the prosecution of the work provided for" in the prime contract.

On April 25, 1962, Bucon and Weyerhaeuser entered into a subcontract by which Weyerhaeuser agreed to furnish certain specified labor and materials in the prosecution of the work provided for in the prime contract.

By this action, Weyerhaeuser sought to recover on the subcontract and bond $65,550, the balance it claimed to be due it under the subcontract; $10,000 for extras furnished at Bucon's request, and $1,596.34 for wind damage suffered by it.

Bucon and Travelers filed an answer denying the liability to Weyerhaeuser and claiming affirmatively the right to setoff all damages resulting from Weyerhaeuser's failure to substantially perform the subcontract.

Bucon also filed a counterclaim by which it sought to recover damages for Weyerhaeuser's alleged failure to "properly perform" the subcontract and for alleged negligence and unskilled performance of its work under the subcontract. Weyerhaeuser filed an answer denying the allegations of the counterclaim.

The case was submitted to the jury by five special interrogatories.

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called Weyerhaeuser.

2. Hereinafter called Bucon.

3. Hereinafter called Travelers.

By its answer to Interrogatory No. 1, the jury found Weyerhaeuser had failed to substantially perform the subcontract.

By its answer to Interrogatory No. 3, the jury found that Bucon had incurred delay penalties assessed by the Corps of Engineers, of which $5,900 was attributable to Weyerhaeuser's failure to "strictly comply with the provisions of its subcontract with Bucon."

By its answer to Interrogatory No. 4, the jury found that Bucon had incurred costs and expenses in furnishing labor and materials "to repair or replace items which were improperly installed or improperly furnished by Weyerhaeuser" in the amount of $2,400.

Interrogatory No. 5 and the jury's answer thereto read:

"Other than penalties, if any, and costs and expenses, if any, found to have been incurred in the answers to interrogatories numbered 3 and 4, above, how much damage, if any, has defendant Bucon proved by a preponderance of the evidence that it sustained as a result of any delay caused by Weyerhaeuser in failing to strictly comply with the provisions of the sub-contract with Bucon?

"Zero."

The Corps of Engineers assessed delay penalties against Bucon, under the provisions of the prime contract, in the amount of $6,720.

On September 19, 1967, Weyerhaeuser filed a timely motion for a new trial, and set up as grounds therefor that the jury's answer to Interrogatory No. 1 was contrary to the evidence, and that the court erred in refusing to give Instruction No. 4, requested by Weyerhaeuser.[4]

On November 8, 1967, the court entered judgment on the jury's answers, adjudging that Weyerhaeuser take nothing and that its complaint be dismissed, and that Bucon recover $8,300 on its counterclaim, plus attorney's fees and costs to be determined later.

Thereafter, on November 8, 1967, the court granted the motion for a new trial on the issue of whether Weyerhaeuser had substantially performed its subcontract, on the ground that it was "contrary to the evidence," and that the damages suffered by Bucon, due to Weyerhaeuser's failure to strictly perform the subcontract, were small in relation to the subcontract price, and that Bucon "can, without injustice, be compensated for its damages by deductions from the contract price"; and ordered that the judgment of November 8, 1967, "shall stand to the extent that it awards damages" to Bucon "on its counterclaim, subject to any recovery to which" Weyerhaeuser "may be entitled."[5]

---

4. The requested Instruction No. 4 read:
"The Court instructs you that there is a substantial performance where the building or structure is actually erected substantially for what was called for in the contract; or where the variances from the terms of the contract are such that the building can actually be used after it is erected for its intended purpose; or where the defects can be remedied by the owner without any great expenditure, and without material damage to other parts of the structure, and may without injustice be compensated for by deductions from the contract price, and where the contractor endeavored in good faith to fulfill his contract."

5. In its order granting the motion for a new trial, the court said:
"* * * The evidence shows that the Corps of Engineers, acting for the United States of America, accepted the building which was the subject of the subcontract in issue and that the United States of America is using that building for the purpose for which it was intended. The evidence also shows that the damage suffered by the defendant due to the failure of the plaintiff to strictly perform was small in relation to the total subcontract price in issue. This Court finds, therefore, that the verdict as reflected by the answer to Interrogatory No. 1, was contrary to the evidence and the defendant can, without injustice, be compensated for its damages by deductions from the contract price. * * *"

Thereafter, the case was retried solely on the issue of whether Weyerhaeuser had substantially performed the subcontract. By its answer to a special interrogatory, the jury found Weyerhaeuser had substantially performed the subcontract.

Bucon made a motion for a directed verdict in its favor at the close of the evidence at the second trial.

After the verdict at the second trial was returned, Bucon filed a motion for judgment n.o.v. and in the alternative for a new trial, on the ground that the evidence, considered in a light most favorable to Weyerhaeuser, was insufficient to support a verdict in its favor, and as grounds for a new trial it further set up that the court erred in permitting counsel for Weyerhaeuser in his closing argument at the second trial to comment on the damages awarded by the jury at the first trial, and that the court erred in instructing the jury on the second trial as to the amount of damages awarded by the jury at the first trial. The motion was denied. Bucon and Travelers have appealed.

■ Bucon contends that the court erred in granting Weyerhaeuser's motion for a new trial solely on the ground that Weyerhaeuser had not moved the court for a directed verdict at the first trial.

■ There is an important distinction between a motion for a directed verdict or a motion for a judgment n.o.v. on the one hand and a motion for a new trial on the other. In passing on a motion for a directed verdict, or for a judgment n.o.v., the court does not exercise discretion, but decides a pure question of law, that is, whether the evidence, considered in the light most favorable to the party against whom the motion is directed, affords substantial support for a verdict in his favor.[6]

If a motion for a directed verdict or for a judgment n.o.v. is sustained, judgment is entered for the movant and the case is ended in the trial court,[7] but the sustaining of a motion for a new trial does not result in a final judgment; it only grants another trial by a different jury.[8]

■■ In passing on a motion for a new trial, the court may and should exercise a sound discretion,[9] and its ruling thereon will not be reviewed in an appellate court in the absence of a clear abuse of discretion.[10]

■ A trial judge, on a motion for a new trial, may set aside a verdict and grant a new trial, if in his opinion "the verdict is against the clear weight of the evidence * * * or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."[11]

6. Glazer v. Glazer, 5 Cir., 374 F.2d 390, 400; McGivern v. Northern Pac. Ry. Co., 8 Cir., 132 F.2d 213, 216; Hinton v. Dixie Ohio Exp. Co., 6 Cir., 188 F.2d 121, 124; United States v. Hartley, 9 Cir., 99 F.2d 923, 925; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354; Cater v. Gordon Transport, Inc., 5 Cir., 390 F.2d 44, 46.

7. Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 500.

8. Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 500; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 353; 6A Moore's Federal Practice, § 59.03, pp. 3708, 3709; 6A Moore's Federal Practice, § 59.04[5], p. 3715.

9. Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71, 75; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 353.

10. Stewart v. Texas and Pacific Railway Company, 5 Cir., 278 F.2d 676, 678; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354, 355; Simpson v. Union Oil Company of California, 9 Cir., 411 F.2d 897, 907.

11. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352, 353; See also: Moist Cold Refrigerator Co. v. Lou Johnson Co., 9 Cir., 249 F.2d 246, 256; Southern Pac. Co. v. Guthrie, 9 Cir., 186 F.2d 926, n. 10, p. 932; Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 500; Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147.

The exercise of that power is not in derogation of the right of trial by jury, but it is one of the historic safeguards of that right.[12]

The distinction above stated between a motion for a directed verdict or for judgment n.o.v. on the one hand and a motion for a new trial on the other was firmly embedded in the common law [13] and has long been recognized by the decisions of this court [14] and other national courts.[15]

Bucon assigned as error that part of the court's charge on the issue of substantial performance at the second trial, which reads:

"There is a substantial performance where the building or structure is actually erected substantially for what was called for in the contract; or where the variances from the terms of the contract are such that the building can actually be used after it is erected for its intended purpose; or where the defects can be remedied by the owner without any great expenditure and without material damage to other parts of the structure and may without injustice be compensated for by deductions from the contract price, and where the contractor endeavored in good faith to fulfill his contract."

Bucon asserts that the instruction would only be proper where the issue was between the owner and the prime contractor with respect to substantial performance.

If that part of the instruction quoted above stood alone, there might be merit in Bucon's contention, but it did not stand alone. In the remainder of the charge on the issue of substantial performance,

the court instructed the jury that in order for it to find that Weyerhaeuser substantially performed the subcontract, it must find that it performed such subcontract "in all the important particulars thereof"; that it did its work thereunder "carefully" and "in good faith" and completed its work "in all material respects," and that Bucon obtained "all benefits which it reasonably anticipated receiving under the subcontract." It emphasized that whether Bucon received all it reasonably anticipated receiving under the subcontract was an important element in determining whether Weyerhaeuser had substantially performed the subcontract.

It further charged the jury that "substantial performance requires the performance of all the important parts of the contract, and a contract is not substantially performed unless the only variance from a strict or literal compliance consists of technical or unimportant omissions" and that "there must be no omissions with respect to essential matters."

■ When the charge on substantial performance is considered in its entirety, we do not think the portion to which Bucon objects misled the jury or resulted in harm to Bucon.

Bucon urges as error the references made by the court and counsel for Weyerhaeuser at the second trial to the answers of the jury to Interrogatories No. 3 and No. 4 at the first trial.

The answer to Interrogatory No. 3 was that of the delay penalties assessed against Bucon, $5,900 was attributable to Weyerhaeuser's failure to strictly com-

12. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 353; Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 408.

13. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 353; Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 499.

14. Boeing Company v. Shipman, 5 Cir., 389 F.2d 507, 513; (citing Aetna Casualty

with approval) Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 500.

15. Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 6 Cir., 74 F. 463, 470, 476, 477; Felton v. Spiro, 6 Cir., 78 F. 576, 582; Travelers Ins. Co. v. Randolph, 6 Cir., 78 F. 754, 759-761; Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 250, 251, 61 S.Ct. 189, 85 L.Ed. 147.

ply with the subcontract, and the answer to Interrogatory No. 4 was that Bucon had incurred in costs and expenses $2,400 to furnish and provide labor and materials to repair or replace items improperly installed or improperly furnished by Weyerhaeuser.

The pre-trial stipulation at the second trial stated:

" * * *

"6. Statement of facts admitted that will require no proof at the trial:

" * * *

"(f) All matters adjudicated by special interrogatories in the prior trial of this cause except the question of substantial performance.

" * * * *"

At the second trial, Bucon introduced in evidence a transcript of the testimony which one of its witnesses gave at the first trial. Such witness testified that, due to the failure of Weyerhaeuser to fully perform the subcontract, Bucon was unable to complete the Base Chapel until after the expiration of a period of several months beyond the time it was obligated to complete its performance of the prime contract, and that it incurred a substantial amount of expense for labor and materials employed by it to repair and replace items that had been improperly installed or improperly furnished by Weyerhaeuser.

■ Therefore, to put the case in proper perspective to the jury when it considered the issue of substantial performance, it was relevant and important for it to know that if it found Weyerhaeuser had substantially performed the subcontract, Bucon would be reimbursed for any delay penalties assessed against it, attributable to the failure of Weyerhaeuser to fully perform the subcontract and for the expenses incurred by it to repair and replace items that had been improperly installed or improperly furnished by Weyerhaeuser.

Moreover, this conclusion is supported, we think, by the inferences reasonably drawn from the pre-trial stipulation quoted above.

Certain photographs of the structure involved were admitted in evidence at the second trial. Counsel for Bucon assert their admission was improper, because of the long time that elapsed between the time the structure was completed and the time the photographs were taken. The evidence does not show how much time elapsed between completion of the structure and the taking of the photographs, but at the trial a witness for Weyerhaeuser testified that the photograph of the exterior of the building clearly depicted it, except for some weathering and a change in the color of the paint, as it appeared when completed, and that two photographs of different parts of the interior of the building clearly depicted such parts as they were at the time of completion, except for the carpets. The witness said he was not certain whether the carpeting was the same.

■ While the time that intervened between the completion of the building and the taking of the photographs may have affected the weight of their evidence, we do not think it rendered them inadmissible, because under the testimony, which was undisputed, no material change in the parts of the exterior and the interior of the building depicted in the photographs had taken place since its completion.[16]

■ In accordance with our holding in United States Fidelity & Guar. Co. v. Hendry Corporation, 5 Cir., 391 F.2d 13, we grant the appellee's unopposed motion for attorney's fees on this appeal, pursuant to Florida Statutes 627.0127, as amended in 1967, F.S.A. The Clerk is directed to fix said fee in the amount of $2,112.08 in taxing costs upon this appeal.

The judgment is affirmed.

16. See Jenkins v. Associated Transport, Inc., 330 F.2d 706, 710.