47 F.3d 1165
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wilbur L. THORNE, Plaintiff-Appellee,
v.
James A. WISE, Trooper; Jeffrey P. Barlow, Trooper,
individually and in their official capacities as
Members of the West Virginia Department
of Public Safety, Defendants-Appellants,
and
Trooper J. D. DOTSON, individually and in his official
capacity as a Member of the West Virginia
Department of Public Safety, Defendant.
 No. 94-1473.
 United States Court of Appeals, Fourth Circuit.
 Argued: October 31, 1994.
Decided: February 3, 1995.
 
 ARGUED: Amy Marie Smith, STEPTOE & JOHNSON, Clarksburg, WV, for Appellants. Stephen Godfrey Jory, JORY & SMITH, Elkins, WV, for Appellee. ON BRIEF: Richard M. Yurko, Jr., Michael Kozakewich, Jr., STEPTOE & JOHNSON, Clarksburg, WV, for Appellants. James R. Fox, JORY & SMITH, Elkins, WV, for Appellee.
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants, Troopers James Wise and Jeffrey Barlow (the Troopers), appeal from the judgment of the United States District Court for the Northern District of West Virginia entered after a jury verdict finding each of them liable under 42 U.S.C. Sec. 1983 for using excessive force in the apprehension of the appellee, Wilbur Thorne. For reasons that follow, we affirm the district court's judgment.
 
 
 2
 * Though much of the facts in this case are disputed, the jury was entitled to credit the following facts, based on the testimony of several witnesses. On the evening of March 17, 1990, Thorne was an employee of the Elkins Italian Restaurant in Elkins, West Virginia.[1] His duties at the restaurant included, among other things, waiting tables and making deliveries. Responding to a delivery call at approximately 8:30 p.m., Thorne left the restaurant in his 1980 Firebird to deliver a pizza, even though his driver's license had been suspended because of a conviction for driving while intoxicated. As was his customary practice, Thorne left the restaurant in his automobile with the pizza on the back seat.
 
 
 3
 The Troopers, in addition to certain City of Elkins' police officers, observed Thorne drive away from the restaurant in his automobile. The Troopers had a report that someone named Wilbur Thorne was driving with a revoked license. After Thorne's automobile left the restaurant parking lot, the Troopers pursued Thorne and activated their blue lights in an attempt to stop him.
 
 
 4
 Thorne responded by accelerating and attempting to evade the officers, committing several additional traffic-related offenses during the course of the pursuit. The pursuit lasted approximately ten to twelve miles and ended when Thorne's automobile stalled in a curve and came to a stop.[2] When the Troopers approached Thorne's car, Trooper Barlow pointed his pistol at Thorne's head and both Troopers Wise and Barlow were screaming at him. Thorne testified that he had difficulty finding the door handle to exit the car because he was scared. As the car door was opened, Trooper Wise pulled Thorne from the car by his hair and threw him on the ground. At this point, Thorne was on his knees and elbows and the Troopers began kicking him in the ribs, and punching and kicking him in the head. As Thorne went to his stomach, the beating continued. Once handcuffed, the Troopers continued to kick Thorne, and one stomped on Thorne's back. Thorne was then picked up by his hair and shirt and thrown against his automobile. The Troopers then removed the pizza from Thorne's car, ate part of it, and rubbed part of it in Thorne's face.[3]
 
 
 5
 Thorne was placed in the police car and was told by Trooper Barlow that if he, Thorne, got any dirt or blood on the seat, he would take him out and beat him again. Thereafter, Trooper Wise took a baton and smashed the headlights, windshield, and driver's side window of Thorne's automobile.[4]
 
 
 6
 Following the incident, and after having Thorne jailed, photographs of the Troopers were taken. These photographs revealed that the Troopers' uniforms were muddy along the crease of their pants from their knees down and dirt was on their shoes; no dirt was shown on their backs, shoulders, elbows, neckties, or gun belts.[5]
 
 
 7
 Shortly after the photographs were taken, Thorne's mother, his girlfriend, Julie Broschart, and Robert Plum talked to the Troopers. After asking Trooper Wise if Thorne was hurt, Trooper Wise responded that Thorne "got what he deserved." (J.A. 87).
 
 
 8
 A short time after being jailed, Thorne was transported to the emergency room for treatment of his injuries. At that time, photographs of Thorne were taken. As noted earlier, these photographs depicted Thorne with pizza sauce in his hair.
 
 
 9
 Thorne's injuries were extensive. As a result of the beating, Thorne had a broken jaw, a fractured eye socket,[6] a black eye (which lasted approximately one month), chipped teeth, and bruises, including some to his head. In addition, as a result of a disc in his jaw being dislocated, Thorne developed temporomandibular joint (TM Joint) disorder.[7] Thorne has permanent damage to the posterior ligament which allows the disc to displace.
 
 
 10
 The TM Joint problem has plagued Thorne for the past four years. For approximately one year, he could not eat solid foods. Consequently, he lived primarily on a diet of soup, which he consumed through a straw. He could not open his mouth wide enough to eat because the pain associated with chewing was unbearable. Sometimes when Thorne eats certain hard and tough foods his jaw will tighten up, necessitating the ingestion of softer foods.
 
 
 11
 According to Dr. Douglas W. O'Dell (Dr. O'Dell), Thorne's dentist, whose practice is limited to the treatment of TM Joint disorders, Thorne's pain and periodic inability to eat certain foods and inflammation of the TM Joint were caused by the displacement of the articular disc. Consequently, Thorne is required to wear a mouthpiece on a regular basis. Dr. O'Dell also opined, that since the disc had not stabilized in four years, it would not heal completely. Dr. O'Dell opined further that if the current treatment was unsuccessful in controlling the recurring pain, future medical treatment, including surgery, must be considered. Finally, Dr. O'Dell opined the TM Joint disorder for which he has been treating Thorne was caused by the traumatic blows to Thorne's face on March 17, 1990.[8]
 
 
 12
 On March 10, 1992, Thorne filed a 42 U.S.C. Sec. 1983 excessive force action in the United States District Court for the Northern District of West Virginia against Troopers Wise, Barlow, and Dotson, seeking $1,000,000 in compensatory damages and $1,000,000 in punitive damages. The case proceeded to trial.[9] The jury returned a verdict in favor of Thorne on his claim against Troopers Wise and Barlow, but returned a verdict in favor of Trooper Dotson on the claim against him.[10] The jury assessed compensatory damages in the amount of $250,000 and awarded punitive damages against Trooper Wise in the amount of $300,000 and against Trooper Barlow in the amount of $150,000.
 
 
 13
 On January 31, 1994, Troopers Wise and Barlow filed a post-trial motion for judgment as a matter of law or, in the alternative, for a new trial and remittitur. The district court denied the motion. The Troopers noted a timely appeal.
 
 II
 
 14
 The Troopers raise several arguments on appeal. We shall address each of these arguments in turn.
 
 
 15
 * The Troopers contend that the district court erred in permitting Dr. George Kirkham (Dr. Kirkham) to testify as to the standard of reasonableness and that the force employed by the Troopers was excessive. Dr. Kirkham testified as to the police standard of conduct and the degree of force reasonably necessary under the circumstances. Dr. Kirkham's testimony focused upon what level of force should be employed by law enforcement officers depending on the level of resistance offered by an arrestee. Kirkham testified that the force employed by the Troopers in this case was excessive under the circumstances.
 
 
 16
 The Troopers did not object to the admission of Dr. Kirkham's testimony at trial. If the Troopers had a problem with Dr. Kirkham's testimony, they should have objected to it at trial. Because they did not, we review this issue for plain error. See Fed.R.Evid. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.").[11]
 
 
 17
 Under the plain error doctrine as applied in our civil case jurisprudence, we will correct an error if it is "plain," and our refusal to review the error would amount to a miscarriage of justice. National Wildlife Federation v. Hanson, 859 F.2d 313, 318 (4th Cir.1988); Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985). In this case, even if the error were "plain," our refusal to consider it would not result in a miscarriage of justice.[12]
 
 B
 
 18
 During the course of Thorne's case-in-chief, the testimony of six individuals revealed that, on certain occasions, the officers beat arrestees gratuitously.[13] The Troopers argue that the admission of this testimony was introduced in violation of Fed.R.Evid. 404(b). We disagree.
 
 Fed.R.Evid. 404(b) provides in part:
 
 19
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 20
 We have characterized Rule 404(b) as "an 'inclusionary rule,' which permits the introduction of all relevant acts except those that prove only character." Kopf, 993 F.2d at 380. In this case, the Troopers suggested that Thorne's injuries were accidental. The fact that the Troopers have a history of inflicting pain and punishment upon arrestees was unquestionably helpful to the jury in assisting it in determining whether Thorne's injuries were in fact accidental, as the Troopers suggested.[14] Because the evidence was not admitted to prove only character, we hold that, in this case, it was admissible under Rule 404(b).
 
 C
 
 21
 The jury awarded Thorne $250,000 in compensatory damages and $450,000 in punitive damages ($300,000 as to Trooper Wise and $150,000 as to Trooper Barlow). The Troopers challenge the size of these awards. ph 1
 
 
 22
 The standard of review governing our examination of compensatory damage awards places an extraordinary burden of proof on the party seeking to challenge the award. We shall not set aside an award of compensatory damages as excessive unless it is " 'against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.' " Johnson v. Parrish, 827 F.2d 988, 991 (4th Cir.1987) (quoting Aetna Casualty & Sur. Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir.1941)); see also Johnson v. Hugo's Skateway, 974 F.2d 1408, 1414 (4th Cir.1992) (en banc ). The Troopers contend that the compensatory damages are: (1) contrary to the clear weight of the evidence; (2) grossly excessive; and (3) if left to stand, will result in a miscarriage of justice.
 
 
 23
 The compensatory damage award is amply supported by the record. The evidence produced at trial showed that Thorne suffered a broken jaw, a fractured eye socket, a black eye, chipped teeth, and various bruises, including some to his head as a result of the brutal beating by the Troopers. As a result of a disc in his jaw being dislocated, Thorne developed TM Joint disorder. In addition, there is evidence in the record that shows Thorne had to ingest food through a straw for an entire year, a subsequent inability to eat consistently solid foods, and recurrent swelling and persistent pain beneath his eye. In light of these severe physical injuries, and the evidence of severe emotional injury suffered by Thorne (including but not limited to the humiliation, mental anguish, emotional trauma, and nightmares suffered by Thorne, and his subsequent inability to hold down a steady job), we cannot conclude that the compensatory damage award was " 'against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.' " Parrish, 827 F.2d at 991 (quoting Yeatts, 122 F.2d at 352).
 
 2
 
 24
 Punitive damages are available in Sec. 1983 cases if a defendant has acted with "reckless or callous disregard of, or indifference to, the rights or safety of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Our review of the punitive damage awards here is limited to whether "the verdict is so grossly excessive so as to shock the judicial conscience." Gumbs v. Pueblo Int'l Inc., 823 F.2d 768, 771 (3rd Cir.1987) (citations and internal quotes omitted); see also King v. Macri, 993 F.2d 294, 299 (2d Cir.1993); Keenan v. City of Philadelphia, 983 F.2d 459, 472 (3rd Cir.1993); Nydam v. Lennerton, 948 F.2d 808, 811 (1st Cir.1991). In light of the Troopers' overly callous indifference to Thorne's rights, we do not find the punitive damage awards in this case so grossly excessive as to shock our judicial conscience. Our reluctance to disturb the punitive damage awards is compounded by the fact that the defendants did not object to the plaintiff's proposed jury instructions, despite having been given the opportunity to do so. An additional instruction could have been included that would have made it clear to the jury that a defendant's financial status can be considered when calculating punitive damages. That burden fell on the officers, however, see, e.g., Morgan v. Woessner, 975 F.2d 629, 641 (9th Cir.1992) ("It is well-settled that under federal law, defendants bear the burden of presenting evidence and proving financial worth."), and we decline to disturb the award without their having made such an initial effort.
 
 III
 
 25
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 The restaurant is now known as Pizakey's
 
 
 [2]
 The Troopers' version of what caused Thorne's automobile to stop is quite different than Thorne's. The Troopers testified that Thorne's automobile crashed head-on into an embankment on the left side of the road, and then bounced off that embankment across the road and hit the embankment on the right side of the road. Thorne introduced evidence that demonstrated there was no dirt or damage to his automobile's hood cover, bumper, fender, grill, or around the headlights
 
 
 [3]
 The Troopers deny any association with the pizza. However, Thorne's version of the pizza incident is well corroborated. First, photographs taken of Thorne at a nearby hospital show that pizza sauce was in Thorne's hair. In addition, Robert Plum went to the scene of the beating the next morning, and noticed partially-eaten pizza on the road and the pizza box in a ditch
 
 
 [4]
 The Troopers categorically deny that Trooper Wise used his baton in the manner suggested by Thorne. However, Thorne's version of the events concerning Trooper Wise's use of his baton is well corroborated. Michelle Pizzino testified that she and her husband witnessed the pursuit and decided to follow the vehicles to see what was happening. Pizzino testified that as she approached the scene in her car she was momentarily blinded by the headlights of the non-police vehicle. Furthermore, photographs were introduced into evidence that depicted three areas where the windshield was smashed from the outside and where the glass from the headlights lay broken in the headlight assembly
 
 
 [5]
 The cleanliness of the Troopers' uniforms is significant because central to their version of the incident is that they wrestled with Thorne, rolling several times in mud, gravel, and dirt
 
 
 [6]
 To this day, Thorne's eye continues to cause irritating problems in that it becomes swollen and hot
 
 
 [7]
 The TM Joint is the joint that is formed by the lower jaw with the base of the skull. The TM Joint allows for all movement of the mouth, involving chewing, speaking, and swallowing
 
 
 [8]
 The events of March 17, 1990 not only caused Thorne permanent and painful physical problems, but also has caused him severe emotional problems. Broschart testified that for at least two years following the beating, Thorne suffered from recurring nightmares. Approximately three times a week, Thorne awakes from the terrible nightmares and his body gets hot and sweaty. In addition, Thorne has been emotionally traumatized; this emotional trauma has interfered with his ability to hold down a steady job
 
 
 [9]
 At trial, the Troopers' defense centered around a complete denial of Thorne's allegations. As part of this defense, the Troopers contended that their actions were reasonable under the circumstances and that Thorne's injuries were accidental, e.g., caused by Thorne hitting his head on his windshield during the chase (or on impact) and when one of the Troopers' shoes accidentally struck Thorne in the face during the scuffle
 
 
 [10]
 We note that the case against Trooper Dotson was not especially strong
 
 
 [11]
 The fact that the Troopers moved in limine to exclude Kirkham's testimony does not alter this conclusion because "an overruled motion in limine does not preserve error on appeal." Rojas v. Richardson, 703 F.2d 186, 189 (5th Cir.1983). See also Marcel v. Placid Oil Co., 11 F.3d 563, 567 (5th Cir.1994) (motion in limine does not preserve error for appeal); McEwen v. City of Norman, 926 F.2d 1539, 1544 (10th Cir.1991) ("A party whose motion in limine has been overruled must nevertheless object when the error he sought to prevent by his motion occurs at trial."); Northwestern Flyers, Inc. v. Olson Bros. Mfg. Co., 679 F.2d 1264 n. 27 (8th Cir.1982) (propriety of district court's evidentiary ruling not preserved on appeal where party sought to exclude evidence in limine but failed to object to its admission at trial)
 
 
 [12]
 In any event, we believe that the district court did not abuse its discretion in admitting this testimony. See Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir.1993) (recognizing that the touchstone of the admissibility of expert testimony is helpfulness to the jury). Clearly, in the context of this case, expert testimony would assist the jury in ascertaining what the standard of reasonableness for the Troopers was
 
 
 [13]
 Summarizing the relevant testimony of the Rule 404(b) witnesses: Ricky Nicholas testified that Troopers Wise and Barlow, after Nicholas' arrest in 1990, elbowed him in the face, pulled his hair, called him names, threw him in the air, kicked him four to five times, and hit his head against his truck. Clarence and William Meade testified that after their arrest in the Summer of 1990, Trooper Wise hit them on the head, making their heads hit a wall. Fred Tingler testified that after his arrest in 1989 or 1990, Trooper Wise slapped him and told him "[i]t doesn't hurt," (J.A. 197), and hit him in the head and mouth. Chris Simmons testified that after his arrest in February 1990, Trooper Wise cursed at him and hit him in the mouth and Trooper Barlow hit him with his elbow. Mark Dingess testified that after his arrest in December 1990, Trooper Barlow hit him in the face
 
 
 [14]
 Admission of prior bad act testimony does not prevent excessive force claims from being analyzed under the objective reasonableness standard articulated in Graham v. Connor, 490 U.S. 386 (1989). In Graham, the Court held that the Fourth Amendment's "objective reasonableness" standard governs determinations of whether a law enforcement officer used excessive force in the course of an arrest or investigatory stop. Id. at 395; Kopf v. Wing, 942 F.2d 265, 267 (4th Cir.1991), cert. denied, sub nom., Prince George's County, Md. v. Kopf, 112 S.Ct. 1179 (1992). The fact that objective reasonableness must be evaluated "without regard to [the officers'] underlying intent or motivation," Graham, 490 U.S. at 397, does not mean that we are to ignore evidence that directly refutes the officers' claim that all injuries sustained by Thorne were purely accidental in nature. Nowhere in its Graham opinion did the Supreme Court suggest that the admission of Rule 404(b) testimony is incompatible with Fourth Amendment analysis