**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT C. BELK,
Plaintiff-Appellee,

v.

No. 95-3210

WAL-MART STORES, INCORPORATED,
d/b/a Sam's Wholesale Club,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-95-252-6-20)

Argued: November 1, 1996

Decided: January 24, 1997

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
HARVEY, Senior United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dana Covington Mitchell, III, MITCHELL, BOUTON,
DUGGAN, YOKEL, MCCALL & CHILDS, Greenville, South Caro-
lina, for Appellant. Eugene Clark Covington, Jr., COVINGTON,
PATRICK, HAGINS & LEWIS, P.A., Greenville, South Carolina, for
Appellee. **ON BRIEF:** Alton L. Martin, Jr., MITCHELL, BOUTON,

DUGGAN, YOKEL, MCCALL & CHILDS, Greenville, South Caro-
lina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Wal-Mart Stores, Incorporated, ("Wal-Mart") appeals
from a judgment entered against it in the amount of $310,250, follow-
ing a jury trial in a personal injury case instituted in the District of
South Carolina. Appellee Robert C. Belk had his left arm crushed
between his delivery truck and a forklift operated by an employee of
Wal-Mart. Invoking the district court's diversity jurisdiction, he
sought and obtained a recovery from Wal-Mart for the personal inju-
ries sustained by him in the accident.

Raising numerous issues, Wal-Mart has here appealed. For the rea-
sons stated herein, we affirm.

I

On the morning of June 19, 1992, Robert C. Belk was delivering
cases of beer to Sam's Club ("Sam's"), a division of appellant Wal-
Mart. That morning, Ms. Dean Deathridge, a Wal-Mart employee,
was assigned to unload Belk's commercial vehicle known as a "bay
truck." Although Deathridge was an authorized forklift operator and
had operated forklifts for some twenty years, she had never before
unloaded a bay truck. Bay trucks have doors located on their sides,
instead of one large door at their rear. The bays are constructed so that
they slope down toward the inside of the truck. This design requires
the forks of a forklift to be tilted downward when lifting a pallet from
the truck. Belk was an experienced forklift operator himself, and he

2

knew of Deathridge's overall forklift experience including her unfamiliarity with unloading bay trucks.

At the time of the accident, Belk was standing inside the truck to the left of Deathridge as she faced the truck. The forklift's design required its operator to face slightly to the right as the forklift was being operated. Deathridge positioned the forks under a pallet of beer and began lifting the pallet. Noting that the pallet had begun to shift slightly because the forks were not centered under the pallet, Belk told Deathridge to readjust the position of the forks. Deathridge then lowered the pallet and repositioned the forks. Once the pallet was properly positioned, Deathridge began backing the forklift away from the truck. This motion caused some cases of beer on the pallet to wobble. Belk raised his left arm to prevent the cases from falling and shouted "stop." Deathridge, however, pulled forward to stabilize the cases, causing the back guard of the forklift to pin Belk's left arm against the side of the truck.

According to his doctor, Belk suffered a "crush-type injury," which required two operations for repair. There were no bones fractured, but the accident did result in a fifteen percent permanent partial impairment to Belk's arm. Belk missed work for some nine months, from the date of the injury, June 19, 1992, to April 1, 1993. Since returning to work, Belk has continued in the same job which he had prior to the accident.

This case was tried before a jury on November 13-15, 1995. At the close of plaintiff's evidence, defendant Wal-Mart moved for judgment as a matter of law arguing that there was insufficient evidence (1) to support plaintiff's claim of future lost wages, and (2) to support a finding of liability on the part of the defendant. The District Court denied this motion. At the close of all the evidence, Wal-Mart renewed its motion for judgment as a matter of law, which was also denied. Thereafter, the court instructed the jury on negligence, assumption of risk, future lost wages, and other relevant issues. Although requested to do so, the court refused to instruct the jury that under South Carolina law a violation of internal company policies is not negligence per se. Nor, in the absence of a request from either side, did the court instruct the jury that it should reduce any award of future lost wages to present value.

3

On November 15, 1995, the jury returned a verdict in favor of Belk for $365,000, but found that he was 15% comparatively negligent. This apportionment of fault reduced the verdict to $310,250.

Wal-Mart then filed a motion for judgment as a matter of law under Rule 50(b), F.R.Civ.P., an alternative motion for a new trial under Rule 59(a), F.R.Civ.P., and an alternative motion to alter or amend the judgment under Rule 59(e), F.R.Civ.P. In a written order dated November 29, 1995, these motions were denied. This appeal followed.

II

Wal-Mart first argues that the District Court erred in denying its motions for judgment as a matter of law. Wal-Mart contends that there was no substantial evidence (1) to support Belk's claim of future lost wages, or (2) to support a finding of liability. Wal-Mart also argues that the court should have found as a matter of law that Belk had assumed the risk of the injury sustained by him.

Although its other grounds were properly preserved in its motions for judgment as a matter of law made during the trial, Wal-Mart did not in those motions claim that Belk had assumed the risk of his injury. A Rule 50(a) motion is a prerequisite to a Rule 50(b) motion. Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996). Thus, this issue was not preserved for appeal. Nonetheless, because Wal-Mart has here argued that a miscarriage of justice would result were we to decline review of this issue, and because the issue in question arises in connection with our analysis of the sufficiency of the evidence supporting the jury's finding of liability, we will address it along with appellant's other two assignments of error claimed to have resulted from the trial judge's denial of Wal-Mart's motions for judgment as a matter of law.

When reviewing a district court's denial of a motion for judgment as a matter of law made under Rule 50, we consider the evidence in the light most favorable to the nonmoving party and review de novo any legal conclusions underlying the verdict. Price, 93 F.3d at 1249; White v. County of Newberry, 985 F.2d 168, 172-73 (4th Cir. 1993). Judgment as a matter of law may be granted only when there is no

4

substantial evidence to support recovery by the party against whom the motion is directed. Mattison v. Dallas Carrier Corp., 947 F.2d 95, 100 (4th Cir. 1991).

We find here that substantial evidence existed to support both Belk's claim of future lost wages and Wal-Mart's liability. According to Wal-Mart, the jury awarded damages in the amount of $76,000 for lost wages.[1] Belk testified that his injury had caused him to work slower, that he was paid on a commission basis and that since his work included physically handling heavy cases of beer, his income would be reduced by approximately $4,000 per year. Belk's income tax returns indicate that his income was indeed reduced by an amount of some $4,000 during his first full year back at work. In his final argument, Belk's attorney multiplied this figure by nineteen, representing the number of years Belk was expected to keep working, and requested that the jury award $76,000 for lost future wages.

Because Belk was paid on a commission basis, the jury could reasonably have concluded that he could not have been as active after the accident as he was before. Under South Carolina law,"[t]he guiding light for future damages is that they need not be exact, as long as they have a reasonable basis." City of Greenville v. W.R. Grace & Co., 640 F. Supp. 559, 569 (D.S.C. 1986), aff'd, 827 F.2d 975 (4th Cir. 1987). The record discloses that Belk made $20,577 for eight months of work in 1993, or $30,860 on an annual basis. In 1994, Belk made only $26,721, a reduction of almost $4,000 from 1993. From our review of the record, we are satisfied that there was substantial evidence before the jury for it to have found that Belk had sustained a loss of $76,000 in future wages.

We further conclude that substantial evidence existed to support the jury's finding that Wal-Mart was liable for Belk's injury. There is clear evidence in the record that Deathridge, Wal-Mart's employee, operated the forklift in a negligent manner and that her negligence caused Belk's left arm to be crushed. The record further indicates that

_____

[1] As noted hereinafter, it cannot be determined whether any part of the jury's aggregate award of $365,000 included an amount for future lost wages. In considering appellant's assignments of error, we will assume that the jury's aggregate award included an amount for future lost wages.

5

Deathridge's supervisor allowed her to unload this particular bay truck even though she had never unloaded one like it before.

Even though Wal-Mart did not preserve the issue of assumption of risk for appeal, that issue is closely tied to the question of Wal-Mart's liability, inasmuch as a finding in Wal-Mart's favor would have barred a recovery for Wal-Mart's negligence. See Griffin v. Griffin, 318 S.E.2d 24, 28-29 (S.C. Ct. App. 1984) (noting that "[i]n South Carolina, the doctrine of assumption of risk may . .. apply to preclude recovery in negigence cases."). Wal-Mart argues that a miscarriage of justice would result if we fail to review this issue in this appeal. A party cannot complain on appeal about the denial of a motion for judgment as a matter of law when it did not sufficiently state the grounds for it below. Atlantic Greyhound Corp. v. McDonald, 125 F.2d 849, 850 (4th Cir. 1942). Thus, "a party's complete failure to move for judgment as a matter of law, barring plain error, generally forecloses appellate review of the sufficiency of the evidence." Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 187 (4th Cir. 1994). Under circumstances such as those present here, the appellate court's scope of review is "limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a `manifest miscarriage of justice.'" Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978) (emphasis in original) (quoting American Lease Plans, Inc. v. Houghton Constr. Co. , 492 F.2d 34, 35 (5th Cir. 1974)), cited with approval in Bristol Steel, 41 F.3d at 187.

Both parties agree that to prove assumption of risk under South Carolina law, a defendant must establish (1) that the plaintiff knew of facts constituting a dangerous condition; (2) that he knew the condition was dangerous; (3) that he appreciated the nature and extent of the danger; and (4) that he voluntarily exposed himself to the danger. See Griffin, 318 S.E.2d at 28-29.

Wal-Mart contends that all of these factors were established as a matter of law at the trial. According to Wal-Mart, Belk was aware of the dangers of using forklifts and was also aware of Deathridge's lack of experience in unloading bay trucks. Wal-Mart argues that by moving towards the pallet of beer and trying to stop the cases of beer from

6

falling instead of backing away after the pallet began shaking, Belk assumed the risk of his injury.

We conclude that the jury had before it substantial evidence permitting it to find that Belk did not assume the risk of his injury, and to therefore find that Wal-Mart was legally responsible for causing Belk's injuries. Although Belk reached to stop the cases from falling, he did not assume the risk of Deathridge's erratic driving of the forklift. Belk knew that Deathridge had twenty years of experience driving forklifts and thus had no reason to assume that Deathridge would negligently drive the forklift forward after he had yelled "stop."

Accordingly, after reviewing de novo the legal conclusions underlying the jury's verdict, we hold that the district court did not err in refusing to grant Wal-Mart's motions for judgment as a matter of law.

III

Wal-Mart next argues that the district court committed reversible error by not granting its motion for a new trial. Five separate errors are assigned:[2] (1) that the verdict was contrary to the clear weight of the evidence; (2) that the trial court erred in failing to instruct the jury that a violation of company policy is not negligence per se; (3) that the trial court erred by submitting the issue of future lost wages to the jury; (4) that the trial court erred in failing to instruct the jury that it should reduce future lost wages to present value; and (5) that the verdict was clearly excessive.

We review a district court's denial of a motion for a new trial for abuse of discretion. See In re Wildewood Litigation, 52 F.3d 499, 502

_____

[2] The district court also denied Wal-Mart's alternative motion to alter or amend the judgment pursuant to Rule 59(e). Appellant argues that the district court abused its discretion by not reducing the verdict by $150,000, or by not increasing the amount of appellee's proportionate fault to 40%. Appellant's sole reasoning for such a reduction in the amount of the award is that "[s]uch an amendment would better meet the ends of justice and equity." We will not summarily set aside this jury verdict in the absence of a clear abuse of discretion by the trial court, which we do not find here.

7

(4th Cir. 1995). The crucial inquiry in our review of a district court's denial of a motion for a new trial is "whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." Bristol Steel, 41 F.3d at 186 (quoting DMI, Inc. v. Deere & Co., 802 F.2d 421, 427 (Fed. Cir. 1986)). When reviewing a motion for a new trial, we may weigh the evidence itself to determine whether the jury's verdict was against the clear weight of evidence. Id. In Aetna Casualty & Surety Co. v. Yeatts , 122 F.3d 350 (4th Cir. 1941), we explained:

> On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent direction of a verdict.

Id. at 352-53.

Applying these principles here, we conclude that the district judge did not abuse his discretion when he denied Wal-Mart's motion for a new trial.

As noted hereinabove, there was abundant evidence before the jury to support its verdict. Although there is evidence of record here from which a jury might have found and apparently did find that plaintiff himself was negligent in raising his hand to intercept the falling cases of beer, we cannot conclude that the clear weight of the evidence necessitates a new trial. The jury concluded that the aggregate award should be reduced by 15% because of Belk's comparative negligence.

Similarly, the trial court's decision to submit to the jury the issue of future lost wages was not an abuse of discretion. Wal-Mart argues that because insufficient evidence was presented to support an award of future lost wages, it was an abuse of discretion for the trial court to submit this issue to the jury. Under South Carolina law, however, future damages may be awarded if supported by a reasonable basis. See City of Greenville, 640 F. Supp. at 569. Belk testified concerning the actual and expected future decrease in his salary. This testimony coupled with Belk's tax returns constituted a reasonable basis from

8

which the jury could conclude that Belk would suffer lost future wages as a result of his injuries.

Wal-Mart further contends that it was error for the district court to fail to instruct the jury to reduce the award of future damages to present value. However, Wal-Mart did not request such an instruction and did not object to the instructions given by the trial court concerning the damages which the jury could award if it found for Belk. Wal-Mart nevertheless argues that it was plain error for the trial court to fail to give a present value instruction and that we should therefore reverse and remand for a new trial.

Wal-Mart's argument concerning a present value instruction assumes that the jury's verdict in fact included an award of future lost wages. Yet, nothing in the record indicates what portion, if any, of the jury's verdict constituted an award of future lost wages. A verdict form was given to the jury and was filled out by the foreperson during the deliberations. The form did not include any breakdown of the various items of damages awarded. Responding to the question: "What is the total amount of damages sustained because of the accident regardless of fault?", the jury recorded the figure "$365,000." Because the jury's verdict was less than the total amount requested by Belk's attorney in his closing argument, it cannot automatically be assumed that an award of damages for future lost wages was included. Moreover, no instruction was requested or given to the jury concerning any requirement for it to increase any award of future lost wages because of inflation. In the absence of any such instruction, the jury's failure to reduce its award to present value could not, as Wal-Mart argues, result in a windfall to Belk. See Rhodan v. United States, 754 F. Supp. 76, 78 (D.S.C. 1991) (noting that "the rate of inflation and the discount rate for investment offset one another"). Accordingly, we conclude that it was not plain error for the trial court to fail to instruct the jury to reduce future damages to present value.

Wal-Mart also argues that the district court erred in failing to give an instruction to the jury concerning the applicability of the principle of negligence per se. Under South Carolina law, an employee's violation of an in-house rule of his employer does not constitute negligence per se. See Caldwell v. K-Mart Corp., 410 S.E.2d 21, 24 (S.C. Ct. App. 1991). At the time of the accident, Sam's Club had a rule

9

stating that no person may be within 20 feet of a forklift while it is lifting or lowering freight. The trial court denied Wal-Mart's request that the jury be instructed that Deathridge's violation of this so-called "20-foot rule" was not negligence per se . Instead, the court charged the jury at some length on the general concept of negligence. The court did not in its charge instruct the jury that any particular conduct would not constitute negligence, reasoning that such a negative instruction would tend to confuse the jury.

Wal-Mart now argues that the district court had a duty to charge the jury as to this principle of law. Wal-Mart had requested the negative negligence per se instruction because Belk's attorney had mentioned several times that Deathridge had violated Sam's 20-foot rule. Wal-Mart argues that if the jury found that Deathridge had violated the rule, it may have concluded that she was negligent merely because of this violation. We disagree.

The district court gave a thorough and adequate charge on the law of negligence, including a discussion of principles of assumption of the risk and comparative negligence. As we have explained, "if the instructions given `sufficiently cover the case and are correct, the judgment will not be disturbed, whatever those may have been that were refused.'" Chavis v. Finnlines Ltd., 576 F.2d 1072, 1084 (4th Cir. 1978) (quoting 9 Wright and Miller, Federal Practice and Procedure, § 2552 at 627 (1971 ed.)). Under Rule 51, F.R.App.P., this Court reviews instructions to the jury as a whole to determine if they had a tendency to confuse or mislead the jury. See Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987), cert. denied sub nom. City of Fayetteville v. Spell, 484 U.S. 1027 (1988). As explained in Spell:

> [t]he test of adequacy of instructions . . . is not one of technical accuracy in every detail. It is simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party.

Id.

10

On this record, we find that it was unnecessary for the trial judge to tell the jury what would <u>not</u> be negligence. Belk's attorney never argued that Deathridge's violation of the rule was negligence <u>per se</u>, and there is no reason to believe that a lay juror would infer that such a rule existed. Indeed, the only mention of the phrase was made by counsel for Wal-Mart in his closing argument, when he properly explained that a violation of a company policy is not negligence <u>per se</u>. We find that the trial court acted well within its discretion in refusing to instruct the jury on negligence <u>per se</u> when there was no reason to believe that the jury would conclude that Deathridge's violation of the 20-foot rule automatically established her negligence. To introduce an unfamiliar concept to a jury, and then to instruct it that the concept does not apply, would serve only to confuse the jury.

Finally, we reject Wal-Mart's argument that the verdict was clearly excessive, warranting a new trial. Wal-Mart argues that the lower court's failure to instruct the jury on negligence <u>per se</u> and its error in instructing the jury as to future lost wages, necessarily resulted in an excessive verdict. Because we have separately rejected those assignments of error, we are not persuaded that in the aggregate they resulted in an excessive verdict and are therefore grounds for a new trial.

For all these reasons, we deny Wal-Mart's request that a new trial be ordered.

IV

Because we find that there was substantial evidence of record to support the jury's verdict, we conclude that the district court did not err in denying Wal-Mart's motions for judgment as a matter of law and did not err in denying Wal-Mart's motion for a new trial. The judgment below is accordingly affirmed in all respects.

<u>AFFIRMED</u>

11